## Hill v. Central Accident Insurance Company, Appellant.

*Insurance—Accident insurance—Death by violent and external means—Evidence—Province of jury.*

In an action upon a policy of accident insurance the evidence was clear that the death of the deceased resulted from the discharge of a pistol when he was alone and rising in the morning. The pistol was offered in evidence. The location of powder mark upon the bolster was proved; and the nature and character of the wound, the position of the body when found, and the fact that deceased was undressed were shown. It also appeared that the deceased kept his revolver under his pillow. The defendant insurance company offered evidence to show that the deceased had heart disease, and that he had his life insured in another company. In reply the plaintiff proved that the deceased was cheerful and happy. *Held,* that it was for the jury to determine whether the pistol was accidentally or intentionally discharged.

Argued Oct. 11, 1904. Appeal, No. 77, Oct. T., 1904, by defendant, from judgment of C. P. Armstrong Co., Sept. T., 1903, No. 132, on verdict for plaintiff in case of G. M. Hill, Administrator of Alfred T. Seitz, v. Central Accident Insurance Company of Pittsburg. Before MITCHELL, C. J., DEAN, FELL, BROWN, POTTER and THOMPSON, JJ. Affirmed.

Assumpsit on a policy of accident insurance.

The facts appear by the opinion of PATTON, P. J., on a motion for judgment non obstante veredicto, which was as follows :

On the trial of the case we affirmed all the defendant's points except that under all the evidence in the case the verdict must be for the defendant, but we reserved the question whether or not there was any evidence in the case to submit to the jury that the death of Alfred J. Seitz was caused by external, violent and accidental means. We instructed the jury that the burden was upon the plaintiff to satisfy the jury, by the preponderance of the testimony, that the deceased came to his death by violent, external and accidental means, and unless they were so satisfied their verdict must be for the defendant.

Hence it would be profitless to attempt to review or try to reconcile the conflict of authorities in other states, whether or

not the burden is on the plaintiff or defendant in a suit upon an accident insurance policy, to prove the death was intentional or accidental.

If this was a suit upon a life insurance policy, it would seem to us that it has been settled in Pennsylvania that the party alleging suicide must prove it: Continental Insurance Co. v. Delpeuch, 82 Pa. 225; Fisher v. Life Assn., 188 Pa. 1; Slatterey v. Maccabees, 19 Pa. Superior Ct. 111, but the policy sued on in this case does not insure life. If it did, the plaintiff's intestate would have been compelled to pay a much higher rate. He was insured only and solely from death by violent, external and accidental means.. The plaintiff alleges in his declaration that the deceased came to his death by external, violent or accidental means, and we see no reason why he should not be compelled to prove it. Moreover, we think this question has been set at rest in Pennsylvania by the decision of the Supreme Court in Keefer v. Life Insurance Co., 201 Pa. 448, where the suit was upon a policy similar to the one in suit, and the defense was that the deceased had not come to his death solely by external, violent and accidental causes. The court said : " The plaintiff's right to recover was limited under the terms of the policy to death from violent, external and accidental causes. If death was the result of disease, the claim made here was without foundation. The burden of proof was on the plaintiff."

However, as before remarked, we need not concern ourselves further about this, because we charged the jury as requested by defendant, and it can now have no ground of complaint.

This brings us to the crucial point in the case : " Was there any evidence to submit to the jury ? " Certainly no direct evidence, for no one was present when the fatal shot was fired; but little if any evidence as to what occurred before the tragedy, for, in our opinion, had the insured lived, and brought suit for an accidental injury, he could not have given his own declaration in evidence, and after his death it seemed to us that his executor, who is only the privy in representation, could not have given the declaration of his intestate in evidence. But witnesses were called to prove all the circumstances surrounding the tragedy. The pistol was offered in evidence. The location of the powder marks upon the bolster was proved. The

nature and character of the wound, the position of the body when found, the fact that deceased was undressed and that the shot was fired just at the time that the deceased usually arose from his bed—all these and many more were submitted to the jury for their consideration in determining whether death was occasioned by accident or design. The defendant on the trial seemed to perceive the strength of this testimony, and on its behalf offered evidence to show that the deceased had heart disease, that he had his life insured in another company, and asked the jury to say from these circumstances that they might infer that the deceased intentionally took his own life. To this the plaintiff replied. by proving by the physician on cross-examination that the deceased was always cheerful and happy.

Why should not the jury be allowed to pass upon this circumstantial evidence? They were men all probably familiar with the use of firearms, knew how easily and often unaccountably firearms are accidentally discharged. They were from the same walk of life as the deceased, and probably better able to understand his motions and conduct than any judge. There is no reason why circumstantial evidence should not be considered in a civil case as well as a criminal. It is true we are more often required to apply the rules of circumstantial evidence in criminal cases than in civil, but the only reason is that crimes are usually committed in secret, and hence it is difficult to obtain direct evidence. This is a rule laid down in Greenleaf on Evidence, 15th edition, sec. 13: " In civil cases it is sufficient, if the evidence on the whole agrees with and supports the hypothesis which it is adduced to prove, but in criminal cases it must exclude every other hypothesis but that of the guilt of the party. In both cases the verdict may well be founded on circumstances alone, and these often lead to a conclusion more satisfactory than direct evidence."

It has been strenuously insisted that the case of Keefer v. Insurance Co., 201 Pa. 448, rules the one before us.

We do not concur in this and think there is a clear distinction between the two cases. That case was whether or not the insured died by accident or of disease. As well said by Mr. Justice POTTER : " The jury were asked to infer, first, that the plaintiff suffered a fall; second, that the fall was ac-

cidental and not the result of disease such as vertigo or cerebral apoplexy ; third, that death resulted as a consequence of the fall.   All this in the absence of an eyewitness to the fact of external injury, and without direct evidence there was a fall.   No one testified how, when or where it occurred.   Nowhere in the testimony does there appear any theory more than a conjecture that the death was caused by accident, rather than by disease."

But in our case there is no question but that Albert T. Seitz came to his death by violent and external means.   Was the fatal shot fired accidentally or by design ?   That was the only question for the jury.   The theory of the plaintiff was that the deceased kept his revolver under his pillow, that it was his habit to rise at six o'clock in the morning and take his revolver with him.   That on the morning of the tragedy in undertaking to do this the weapon was accidentally discharged. To sustain this theory they proved all the surrounding facts and circumstances, offered the revolver in evidence, submitted it to the inspection of the jury and argued the case on that theory.   The defendant offered evidence to show that the defendant had heart disease ; that he had his life insured in another company.   They, too, exhibited the weapon to the jury, snapped it in their presence, argued from the construction of the weapon that it could not be accidentally discharged by pulling it from under the pillow.   Here, then, were conflicting theories, both sustained by circumstantial evidence, both ably argued before an intelligent jury, why should not they be allowed to decide the question of fact.   We think this case comes within the ruling of Van Eman v. Fidelity & Casualty Co., 201 Pa. 537.   That when there is evidence that death resulted from violent and external means, and there are conflicting theories as to how the death occurred it is for the jury to pass upon the facts.

And now February 3, 1904, the motion to enter judgment in favor of the defendant non obstante veredicto is refused.

The court entered judgment for plaintiff for $2,300 on the verdict.

*Error assigned* among others was in entering judgment on the verdict.

*W. A. Stone*, of *Stone & Stone*, with him, *Rayburn & McCain*, for appellant, cited : Keefer v. Life Ins. Co., 201 Pa. 448.

*Ross Reynolds*, with him, *James H. McCain* and *W. J. Christy*, for appellee, cited: Shank v. United Brethren Mut. Aid Society, 84 Pa. 385; Continental Ins. Co. v. Delpeuch, 82 Pa. 225; Fisher v. Life Assn., 188 Pa. 1; Slatterly v. Maccabees, 19 Pa. Superior Ct. 111; Standard Life & Accident Ins. Co. v. Thornton, 49 L. R. A. 116; Anthony v. Mutual Accident Assn., 26 L. R. A. 406; Travelers Ins. Co. v. McConkey, 127 U. S. 661 (8 Sup. Ct. Repr. 1360); Star Accident Co. v. Sibley, 57 Ill. App. 315; Jones v. U. S. Mut. Accident Assn., 92 Iowa 652 (61 N. W. Repr. 485); Mallory v. Travelers Ins. Co., 47 N. Y. 52; Whitlatch v. Fid. & Cas. Co., 71 Hun, 146; (24 N. Y. Supp. 537).

PER CURIAM, Nov. 4, 1904 :.

This judgment is affirmed on the opinion of the court below on the motion to enter judgment non obstante veredicto.