BLANCHE M. PITTMAN, Admx., Appellee, *vs.* THE CHI-
CAGO AND EASTERN ILLINOIS RAILROAD Co. Appellant.

*Opinion filed December 17, 1907—Rehearing denied Feb. 6, 1908.*

1. PRACTICE—*correct practice where evidence does not support particular counts.* If the evidence does not tend to support particular counts of the declaration the correct practice is to submit a written instruction to the court presenting that proposition, and it is not correct practice to move the court to dismiss the counts.

2. SAME—*court is not authorized to dismiss count.* A court is not authorized to dismiss certain counts of the declaration, and can only dismiss the suit itself for want of jurisdiction, want of prosecution, disobedience of rules or orders, or for some other recognized cause.

3. RAILROADS—*when an engineer's negligence does not relieve company from liability.* That the negligence of an engineer in backing cars upon a switch track at too great a rate of speed, combined with the negligence of the company with respect to its track, in producing the death of the conductor of the train, does not relieve the company from liability nor preclude the finding that the negligence of the company in the matter of its track was the proximate cause of the injury.

4. SAME—*when error in instruction as to constructive notice is harmless.* Error in an instruction respecting constructive notice in failing to state that the defendant railroad company is entitled to a reasonable time in which to cause a repair to be made after it has had a reasonable time in which to discover the defect is harmless, where the company had actual notice of the defect and ample time thereafter to have made the repairs before the injury.

5. SAME—*what is not necessarily negligence on part of a conductor.* A conductor on a railroad train has a right to suppose that the engineer will obey his signals, and the fact that the conductor must place himself in positions where his safety depends upon the care and discretion of the engineer does not necessarily amount to a failure to exercise ordinary care.

6. SAME—*the duty of a conductor does not include inspection of tracks.* The duty of a conductor of a railroad train does not include inspection of the tracks, and the fact that he knew, several days before his injury, that the bumping-post on a certain switch track was leaning over, and had asked the station agent when he was going to fix it, does not show that he knew of an opening in the rails of such track which caused the derailment resulting in his death.

7. INSTRUCTIONS—*when rule that one cannot complain of instructions like his own does not apply.* An instruction directing a verdict for the plaintiff if the jury find the facts therein stated to be proven must not omit any element essential to a recovery; and the fact that such element is not mentioned in instructions for the defendant which state that the plaintiff cannot recover unless certain material facts have been proven, but which do not undertake to include all the necessary facts, does not cure the omission in the plaintiff's instruction nor preclude the defendant from assigning error thereon.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Kankakee county; the Hon. FRANK L. HOOPER, Judge, presiding.

W. R. HUNTER, and H. T. DICK, for appellant.

H. K. & H. H. WHEELER, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On March 18, 1905, Harry M. Pittman was the conductor of a local freight train of the appellant, Chicago and Eastern Illinois Railroad Company, making trips each week day from Momence north to Dalton and back. He had a crew of an engineer, fireman and three brakemen. On the morning of that day he went north as usual from Momence, and at Grant Park was required to set two cars on the side-track,—one, a car of coal, to be set by the side of the boiler room of the Curtis brickyard plant, and the other, a car of wood, to be left at a wood-pile south of the boiler room. The main track ran nearly north and south, and the side-track left the main track some distance south of the boiler room and curved to the east and then north and ran by the west side of the boiler room, in which there were windows through which the coal was to be shoveled. The track at the boiler room was elevated three or four feet above the

natural surface of the ground and it ended just north of the boiler room, at a bumping-post. The two rails at the north end had been turned up and bent so as to come together, and were fastened to the post. About four weeks before that time the bumping-post had been knocked out of place toward the north-east, which had pulled the west rail from its connection with the rail south of it. The rails had been fastened together at the ends with fish-plates on each side and bolts running through the rails. Pulling the rails apart left a vacant space of three or four feet on the west side, and sticks of cordwood were thrown across the track in that space. Just west of this vacant space in the rail there was a water tank standing on posts near the track. The engine was headed north, and pushed five cars, with the car to be left at the boiler room in front, up quite a steep grade towards the boiler room. The engine was small and at first was not able to push the cars up the grade. The engineer backed down for a fresh start, and after getting the sand-box to working made a second attempt, using all the force he could. Pittman was standing on the first coal car at the north end, and when about two hundred feet from the bumping-post he gave the engineer a signal to stop. There was not room on the side of the car next to the boiler room for a person to pass through, and he went forward on the coal car and got down on the west side, standing with one foot on the oil-box and holding on to the side of the car. He gave repeated signals to the engineer to stop and a brakeman was also energetically giving such signals, but the cars did not begin to slow down until within perhaps one hundred and fifty feet of the bumping-post, and they were still moving when they passed the boiler room. When the wheel on the west side struck the open space the car left the track and turned toward the water tank on the west. The trucks were stopped and the bumping-post was knocked down, but the body of the car went three or four feet beyond the post. Pittman was caught between the side of the car and a post

of the water tank and was killed. He left the appellee, his widow, and a child was born about forty days after his death. Appellee was appointed administratrix, and brought this suit in the circuit court of Kankakee county to recover damages resulting from his death. Upon a trial there was a general verdict finding the defendant guilty and assessing the plaintiff's damages at $5000, and a special finding that the deceased did not know of the condition of the track and bumping-post before he started to place the cars at the boiler room. On appeal to the Appellate Court for the Second District the judgment was affirmed, and this further appeal was prosecuted.

At the close of the evidence for the plaintiff, and again at the close of all the evidence, the defendant moved the court to dismiss certain counts of plaintiff's declaration, and the motion was denied. There were seven counts in the declaration, which charged the defendant with liability on various grounds, and it is now contended that the court erred in refusing to dismiss all of the counts except those that charged that the track was defective and the rails pulled apart, for the reason that there was no evidence to sustain any of the counts except those making such charges. The only counts which the evidence tended to sustain were those which alleged that the rails were pulled apart and the track was thereby rendered unsafe, and when the motion was made the attorney for plaintiff stated that the only claim of liability was on account of the track being defective and out of repair for so long a time that the defendant, by the exercise of ordinary diligence, could have discovered the defect. The court, in overruling the motion to dismiss part of the counts, said that if, in the judgment of the attorneys for the defendant, the evidence was insufficient to support any particular count or counts of the declaration they might present instructions raising that question as to such counts, and the attorneys did not present any such instruction. Counsel say that the provision of the Practice act that the

defendant may apply to the court to instruct the jury to dis-
regard a faulty count or counts applies only to counts that
do not state a good cause of action, but that the court ought
to dismiss counts which are not sustained by evidence. The
first part of the proposition is correct, but there is no prac-
tice by which the court is either authorized to dismiss counts
of a declaration or to instruct the jury orally respecting
them. A plaintiff may dismiss a suit or withdraw a count
or counts, but the court is not authorized to dismiss par-
ticular counts, and can only dismiss the suit for want of
jurisdiction, want of prosecution, disobedience to some or-
der of the court or for some other recognized cause. If
there is no evidence fairly tending to prove the cause of
action alleged in a particular count or counts, so that a
judgment based thereon could not be sustained for want of
evidence to support it, the proper practice is to present a
written instruction to the court, which it would be the duty
of the court to give. The court did not err in denying the
motion.

Counsel next argue that the condition of the track was
not the proximate cause of the accident, which is a ques-
tion of fact finally settled by the judgment of the Appellate
Court. If the engineer, as a matter of fact, was guilty of
negligence in the rate of speed and the manner in which he
handled the cars it would not relieve the defendant from li-
ability for its negligence in respect to the track. Negligence
of the engineer concurring with that of the defendant would
not bar a recovery. *Pullman Palace Car Co.* v. *Laack,* 143
Ill. 242; *Chicago and Northwestern Railway Co.* v. *Gilli-
son,* 173 id. 264.

But one instruction was given at the request of the plain-
tiff, and it directed a verdict finding the defendant guilty if
the jury should find the facts therein stated to have been
proved by a preponderance of the evidence. The instruction
was quite lengthy and it is criticised by counsel in many
particulars. One objection made is, that it stated as one ele-

ment of the hypothesis of fact that the track was defective or unsafe for so long a space of time as would have enabled the defendant, or its agents whose duty it was to keep said track in repair, to have learned of such defect by the use of ordinary diligence, and did not allow further time to make repairs. It is argued that the correct rule was not stated, for the reason that after the defendant had notice, the law permitted such further sufficient time to elapse as would enable the defendant to notify the proper employee and make the repairs before liability would attach. Counsel are right as to the rule, but in this case the liability did not rest on constructive notice from the lapse of time, but rested upon actual notice, and it is immaterial whether the instruction was technically right or not. The uncontradicted evidence was that the track was out of repair and in the condition stated for some weeks; that the station agent had actual notice of its condition; that new rails had been procured to make repairs and had been lying at the station, on the platform, for about a week. There was actual knowledge and ample time to remedy the defect, and if the instruction did not exactly fit the case it did no harm. A further objection made to that part of the instruction is, that nowhere in the record does it appear what agent was required to keep the track in repair; but, so far as we can see, that is a matter of indifference.

The instruction required the jury to find that the deceased was in the exercise of due care, but it is objected to as limiting such care to the time while he was on the coal car. It is said that if the engineer had obeyed the signals and stopped the engine no injury would have resulted, and that the deceased was negligent in going on the car and placing himself in a position where his safety depended on the engineer. He surely had the right to suppose that the engineer would obey his signals, and if he could never put himself in a position where his safety depended on the care and discretion of the engineer he would have had to keep off

the train entirely, which neither the law nor any rule of the defendant contemplated. There would be no time in the operation of the train when the conductor would not be dependent on the engineer and on his obedience to orders.

The principal objection to the instruction is that it omits the material facts that the deceased could not have known of the condition of the track by the exercise of due diligence, and that he did not have equal means with the defendant of knowing that the track was defective. The instruction required the jury to find that the deceased had no knowledge of the defective and unsafe condition of the track, and the jury made the special finding, before stated, that he did not have such knowledge. Two witnesses testified for the defendant that three or four days before the accident the deceased asked the station agent when he was going to get the bumping-post repaired, but there was much evidence that he knew nothing about it, and the controverted question of fact has been settled by the judgment of the Appellate Court. His duty as conductor did not include the inspection of tracks, and if the instruction had contained the condition contended for, that the deceased could not have known of the condition of the track by the exercise of due diligence, it would have been misleading without an explanation as to what would constitute such diligence and that he had no duty of inspection. Under the evidence the jury could not have found that he had the same opportunity to know of the defect that defendant did. Even if he knew, several days before the accident, that the bumping-post was leaning over, it does not follow that he knew of the opening in the rail; nor does it follow that he did not suppose or have a right to suppose that the repairs had been made. The rails for that purpose had been at the station for a week or so, and he might well have presumed that they had been put in place.

Counsel for appellee say in relation to this objection that the defendant procured instructions to be given containing

the same omission, and therefore is not entitled to complain of this one. One party cannot complain of an instruction given on behalf of the opposite party which is like one given at his own request. But that rule does not apply to the instructions in this case. The instruction in question directéd a verdict, and would be fatally defective if it omitted any controverted fact essential to a recovery. (*Pardridge* v. *Cutler*, 168 Ill. 504.) The instructions given at the request of the defendant told the jury that the plaintiff could not recover unless she had proved certain material facts, but they did not undertake to include all the necessary facts. If some material fact necessary to a recovery was not proved, the defendant had a right to an instruction that there could be no recovery in the absence of such proof, without mentioning other facts, and such instructions do not cure a defect in one which purports to state all facts which authorize the judgment. In view of the evidence the jury could not have found differently as to the omitted fact, and therefore the verdict was not influenced by it and the instruction was not harmful.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*