HENRY H. KENNEDY *et al.* Exrs., Appellees, *vs.* THE ÆTNA
LIFE INSURANCE COMPANY, Appellant.

*Opinion filed December 22, 1909.*

1. TRIAL—*correct practice if there is no evidence to support particular count.* If there is no evidence tending to support a particular count of the declaration, the defendant, if he wishes to be in a position to take advantage of that fact, should present to the court, at the proper time, a written instruction that there can be no recovery upon such count.

2. SAME—*when a refusal to take case from jury is not error.* The fact that two counts of the declaration alleged that the shooting of the insured was for the purpose of robbery while a third count alleged that it was accidental does not require the court to take the case from the jury under a written instruction to find the issues for the defendant, where there is evidence tending to show that the shooting was for the purpose of robbery and no peremptory instruction is requested by the defendant as to the issue of accidental shooting.

3. INSURANCE—*when question whether the insured was shot for purpose of robbery is for the jury.* Where the right of the plaintiff to recover the full value of an insurance policy depends upon proof of the allegations that the insured was shot for the sole purpose of robbery, that issue is properly submitted to the jury under evidence that the shooting occurred in the evening; that the insured was stopped on the street corner by two disreputable-looking men; that as he started to run he was shot but continued running, while the two men ran in opposite directions, there being other people on the street.

4. SAME—*what does not show that shooting was not for purpose of robbery.* The mere fact that the insured, after the shooting, was still wearing his scarf-pin and watch chain does not show that the shooting was not for the purpose of robbery, where the insured had started to run when he was shot and continued to run for about a block, while the men who did the shooting separated and escaped, there being other people on the street at the time.

5. APPEALS AND ERRORS—*mere improbability of testimony is not a question for the Supreme Court.* The Appellate Court and the trial court are required by law, when the question is properly raised, to consider the probability of the testimony; but the mere improbability of testimony cannot be considered by the Supreme Court in suits at law coming through the Appellate Court.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. M. W. PINCKNEY, Judge, presiding.

FLANNERY & McKINLEY, for appellant.

JOSEPH W. MOSES, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an action in assumpsit brought in the circuit court of Cook county to recover a death claim under a policy of accident insurance issued by appellant to James A. Fullenwider, appellees' testator. The cause was tried upon a declaration as amended, consisting of three counts, the first alleging that Fullenwider came to his death through external, violent and accidental means, to-wit, by bullet wounds inflicted by certain persons who had assaulted him for the sole purpose of robbery. The third count contained substantially the same allegations, so far as any question here in dispute is involved. The second count alleged that Fullenwider sustained the injury solely through external, violent and accidental means, being struck by a bullet accidentally discharged from a revolver held by some person other than Fullenwider. On issues being joined a trial resulted in a verdict of $5832.85, the full amount recoverable under the policy, with interest. On appeal to the Appellate Court that judgment was affirmed, and this appeal followed.

The policy was for $5000, issued subject to the following conditions: (1) That the insured shall "sustain bodily injuries solely through external, violent and accidental means," etc. (2) "If such injuries alone cause the death of the insured * * * the principal sum shall be payable to the beneficiary," etc. (15) "In the event of death * * * due to injuries intentionally inflicted upon the in-

sured by any other person, (except assaults committed for the sole purpose of burglary or robbery,) * * * the limit of this company's liability shall be one-tenth the amount otherwise payable," etc.

The evidence in the record shows, without contradiction, that on the evening of December 2, 1903, about seven o'clock, while walking in a public street of Chicago in the vicinity of Forty-first street and Wabash avenue, Fullenwider was shot. Two witnesses swore they saw the shooting. Mrs. Grace Doyle McGuire testified for appellees that in December, 1903, she lived on Forty-sixth street near Wabash avenue, and on the evening of the shooting was walking from her home north on Wabash avenue to her mother's house at No. 4130 Wabash avenue; that upon arriving there she saw persons standing on Forty-first street, and walked on until she came to a lamp-post in front of a frame cottage just south of the corner; that she then saw two men holding Fullenwider as if they were wrestling with him; that she heard Fullenwider say "Oh!" or "No!" and at the same time break away from them and run south; that just as he was breaking away and turning one of the men shot him; that she saw something shining in the hand of the man who did the shooting and that it looked like a revolver; that after the shot one of the two men ran north-east and the other north-west, and Fullenwider ran south in the street shouting "Robbers!" "Murder!" "Police!" "Help!" "I am shot!" that she went back to her mother's house to get help and was standing on the porch when Fullenwider ran past the house; that just after that she saw a man cross over and assist Fullenwider to Forty-second street.

Thomas Lowry testified for appellant, in substance, that he was walking south on the west side of Wabash avenue to his room on Forty-second street and saw two men, whom he described as roughly dressed and disreputable-looking, standing near one of the pillars under the South Side ele-

vated railroad, which crosses Wabash avenue at Fortieth street; that one of the men walked out towards him, and Lowry becoming suspicious was about to turn back, but seeing a policeman coming down Fortieth street he changed his mind and continued south on the west side of Wabash avenue; that the two men followed about seventy-five feet behind him until he passed Forty-first street; that when he was about one hundred feet south of the latter street he heard loud talking, and turning around saw the two men and the insured standing on the south-west corner of Forty-first street and Wabash avenue; that the two men were four or five feet apart and Fullenwider was standing between them, and was starting to run when the man nearest him shot him in the back; that the two men then ran, one north-east and the other north-west; that Fullenwider hallooed for help and ran south on the west side of the street; that witness went north to meet him and assisted him to Forty-second street, where they met Dr. Jipson, who took the injured man to the hospital. This witness testified that he saw no one on the west side of the street between Forty-first and Forty-second streets except Fullenwider, until he met Dr. Jipson at the corner of Forty-second. When he met Fullenwider he noticed the latter wore a scarf-pin and watch chain.

The testimony shows that Fullenwider was a lawyer, with offices in the down-town district; that he was married and lived with his family at 472 Forty-second street, a residence district; that between five and six in the evening of the day he was shot he left his office for home, going first to a flat-building which he owned at 4031 State street to superintend some repairs, and left this building within an hour of the time he started from his office. It also tends to show that he had walked in the direction of his home south to Forty-first street and east on that street to Wabash avenue when he was halted by two men. Fullenwider died at the hospital the next day as a result of the

bullet wound. So far as this record shows his assailants are unknown and have never been apprehended.

At the close of appellees' evidence, and again at the close of all the evidence, appellant offered a motion in writing requesting the court to give to the jury a peremptory instruction to find the issues for the appellees and to assess their damages at $500, with interest at five per cent from February 1, 1904. These motions were both denied.

It is insisted by appellant that there is no evidence fairly tending to establish an assault for the sole purpose of robbery or that the bullet which inflicted the mortal wound on Fullenwider was accidentally discharged, and that therefore the instruction requested in said motions should have been given. It is conceded by counsel for appellant that if the evidence introduced was legally sufficient, under any one of the counts in the declaration, to warrant returning a verdict for more than the amount requested by the motion and instruction in question, then the rulings of the court refusing to so instruct were correct. As we understand their argument, they seem to insist, however, that the court should in some way have refused to submit to the jury the case upon all these three counts, as they contend that the allegations set out in the first and third counts are inconsistent with those of the second count, and that any evidence tending to show that the mortal wound was inflicted in connection with an assault for the purpose of robbery is entirely inconsistent with the theory that the revolver was fired accidentally. In *Pittman* v. *Chicago and Eastern Illinois Railroad Co.* 231 Ill. 581, this court said (p. 585): "There is no practice by which the court is either authorized to dismiss counts of a declaration or to instruct the jury orally respecting them. A plaintiff may dismiss a suit or withdraw a count or counts, but the court is not authorized to dismiss particular counts, and can only dismiss the suit for want of jurisdiction, want of prosecution, disobedience to some order of the court or for some

other recognized cause. If there is no evidence fairly tend-
ing to prove the cause of action alleged in a particular
count or counts, so that a judgment based thereon could
not be sustained for want of evidence to support it, the
proper practice is to present a written instruction to the
court, which it would be the duty of the court to give."
In this case, if there was no evidence supporting any par-
ticular count of the declaration and appellant wished to be
in position to take advantage of that fact, it should at the
proper time have presented a written instruction to the
court to the effect that no recovery could be had under said
count. This was not done.

Counsel for appellant further contend that the evidence
tends to show that the murder of Fullenwider was com-
mitted for revenge for some real or fancied wrong at the
hands of the victim, rather than that the assault was for
the purpose of robbing him. We think the testimony of
the eye-witnesses, Mrs. McGuire and Lowry, is entirely
consistent with the theory that the assault by these two un-
known men upon Fullenwider was with intent to rob. We
find nothing in the evidence that would justify a reasonable
conclusion in support of the assault being made for the
purpose contended for by appellant. There is no evidence
to indicate that anyone had any animosity or ill-feeling
toward Fullenwider. The testimony does not tend to show
that anyone, except his wife and his office associate, knew
in advance that Fullenwider was to stop at the flat-building
before going home. Moreover, if these two men had known
that fact they would not have been likely to wait for him
at Fortieth street and Wabash avenue when his natural
route home was down State street toward Forty-first street.
We find no basis in the suggestion in the briefs that these
men mistook Fullenwider for the witness Lowry. There
was a total dissimilarity in their appearance, Fullenwider
being below medium height and thick-set, while Lowry was
tall and slender. Neither is there anything in the evidence

that tends to show any reason why these men should assault Lowry. The slight discrepancies in the testimony of Mrs. McGuire and Lowry are no more than natural in attempting to relate the circumstances of such a tragedy. In their excitement either of them might easily have been honestly mistaken as to some of the occurrences. Counsel for appellant argue that Mrs. McGuire's story is unreasonable in that she states that she walked north past her mother's house instead of stopping there, as she naturally would. Her explanation, already given, is not so improbable that the jury would not be justified in believing it. The Appellate and trial courts are required by law, upon questions properly raised, to take into consideration the question of improbability of the evidence. We cannot, upon consideration of such questions in this court, reject testimony "unless it is contrary to some natural law, as, for example, evidence that on a certain occasion the sun at noontime in this latitude cast a shadow to the south." (*Zetsche* v. *Chicago, Peoria and St. Louis Railway Co.* 238 Ill. 240; *O'Callaghan* v. *Dellwood Park Co. ante,* p. 336.) The argument of appellant that this assault would not have been made for the purpose of robbery at the point and time it was as other people were known to be on the street in the vicinity can be urged with equal force against appellant's theory that the shooting was done for the purpose of revenge or animosity toward Fullenwider or by mistake in thinking he was another person. Neither do we consider that there is any force in the contention that the assault was not for the purpose of robbery because nothing was taken from Fullenwider. The evidence shows that after he was shot he ran south for nearly a block. The assailants naturally would not follow, as they saw other persons on the street and their purpose of robbing their victim was thus frustrated. Most, if not all, of the contentions of appellant rest upon improbable assumptions or mere conjecture, without any evidence to support them. The reasonable and

natural deduction to be drawn from all the evidence in the record is that the original assault was for the purpose of robbery, and that the assailants desisted in their attempt and fled to escape arrest for both robbery and murder. The evidence fully justified submitting the cause to the jury on the first and third counts, which charged that the assault was for the purpose of robbery, hence the court did not err in refusing to give the instruction requested by the appellant. *Libby, McNeill & Libby* v. *Cook*, 222 Ill. 206; *Railway Officials Accident Ass.* v. *Milward,* (Ky.) 82 S.W. Rep. 364; *Jenkin* v. *Mutual Life Ins. Co.* (Cal.) 63 Pac. Rep. 181; *Hill* v. *Central Accident Ins. Co.* (Pa.) 59 Atl. Rep. 262; *Stevens* v. *Continental Casualty Co.* (N. Dak.) 97 N. W. Rep. 862.

The facts in *Butero* v. *Travelers' Accident Life Ins. Co.* 96 Wis. 536, referred to and relied upon by appellant, were so very different from those in this case that we do not consider anything there said at all in conflict with what has been said in this opinion.

On this record we do not find it necessary to decide whether there is any evidence which justified the submission to the jury of the question whether Fullenwider met his death through the accidental discharge of the revolver in the hands of one of his assailants. If appellant had desired to raise that question it should have requested the court to give an instruction that there was no evidence tending to support the second count of the declaration. Having only asked for an instruction to direct a verdict and there being evidence in the record to support the first and third counts, the court did not err in refusing to give the instruction so requested. *Arnold* v. *Bournique,* 144 Ill. 132; *Pittman* v. *Chicago and Eastern Illinois Railroad Co. supra.*

Counsel for appellant further insist that the court erred in refusing to give certain instructions requested by it on the ground that they ignored the theory of the averment

in the declaration that the revolver was accidentally discharged. As we have seen, appellant did not request that an instruction should be given the jury to disregard the second count in the declaration. On the contrary, appellant requested, and had given, an instruction that recognized both theories upon which the declaration was drawn, hence the refusal of these instructions cannot now be raised by appellant. *Consolidated Coal Co.* v. *Haenni,* 146 Ill. 614; *Chicago and Alton Railroad Co.* v. *Harbur,* 180 id. 394; *Purtle* v. *Bell,* 225 id. 523.

We find no substantial error in the record. The judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*