SELMA KRESSE, PLAINTIFF-RESPONDENT, v. METRO-
POLITAN LIFE INSURANCE COMPANY, DEFENDANT-
APPELLANT.

SELMA KRESSE, PLAINTIFF-RESPONDENT, v. EQUITABLE
LIFE ASSURANCE SOCIETY OF THE UNITED STATES,
DEFENDANT-APPELLANT.

Submitted May 26, 1933—Decided September 27, 1933.

For the appellant Metropolitan Life Insurance Company,
*Perkins, Drewen & Nugent.*

For the appellant Equitable Life Assurance Society, *Collins & Corbin* (*Edward A. Markley*, of counsel).

For the respondent, *Richard Doherty*.

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. This is an appeal from a judgment in favor of the plaintiff below, Selma Kresse, and against the defendants, Metropolitan Life Insurance Company and the Equitable Life Assurance Society of the United States. There were two actions, one against each company, and they were consolidated.

Mrs. Kresse was the beneficiary named in the policies of accident insurance issued by these companies to her husband, now deceased. The contract issued by the Metropolitan Life Insurance Company contained an agreement to pay the beneficiary the sum of $5,000 in case of death of the insured "caused directly and independently of all other causes by violent and accidental means." There was a further provision that "this insurance shall not cover suicide or any attempt thereat while sane or insane." A like provision in the policy of the Equitable Life Assurance Society of the United States was to the effect that the indemnity was payable "upon due proof that the death of the insured resulted solely from bodily injuries caused directly, exclusively and independently of all other causes by external, violent and purely accidental means," and a provision that such injuries or death shall not be the result of "or caused directly or indirectly by self-destruction, &c."

The deceased husband of the plaintiff was forty-five years of age at the time of his death and lived with his wife and twelve-year-old daughter in their own home. He was a draftsman by profession and, at the time of his death, unemployed. His wife made a living for the family as a dressmaker. On the day that the insured died, he was alone in the house, his wife and daughter having left about three-ten o'clock in the afternoon so that the twelve-year-old daughter might go to a dancing class. They were expected back about seven o'clock

in the evening, the deceased having said that he would have the supper ready. That evening, at about five minutes before seven, the mother and daughter returned, found the house in darkness, rang the front door bell and, getting no response, called upon a neighbor for help. The result was that when entrance was gained by way of the cellar, the insured was found dead from asphyxiation by illuminating gas. The neighbor who had forced an entrance into the house testified that upon entering the cellar he smelled gas; thence he proceeded up the rear stairs to the door of the kitchen, the smell of gas increasing. He had a searchlight with him, which he used. On opening the kitchen door, he discovered the body of the insured "sitting on a chair in the breakfast nook, slumped over, laying there, with his head against the table —sitting down." Four of the valves on the gas range were wide open and the witness described the gas as "roaring" out of the four open burners. All doors and widows were tightly closed. This witness, Berg, shut off two of the open gas valves on the range, and hurrying out of the building, called the police. The officer who responded testified that on entering the house he was met by a "cloud of gas; that everything in the kitchen was closed, the dining room door, the kitchen windows and everything else." On the gas range over the right front burner was a small cooking pot containing some cold water.

Mrs. Kresse brought suit on these policies of insurance, alleging facts that brought the death of her husband within the obligation of the contract of insurance.

The answers deny the allegations in the complaint and set up as separate defenses that due and proper notice of death was not given and that the deceased came to his death by self-destruction.

The consolidated cases were tried, submitted to the jury, and verdicts returned against the defendants.

The appellants write down six reasons for reversal, the first being that the trial court erred in denying defendants' motion for a nonsuit and a direction of verdict. We think the motion for a nonsuit was properly denied.

There is a legal presumption against suicide and that presumption, coupled with the other proofs in the case on the part of the plaintiff, made out a *prima facie* case. The plaintiff was entitled to the benefit of the presumption, that the death of the insured was not caused by self-destruction. This presumption, of course, is rebuttable. After the plaintiff's evidence was received and the testimony on behalf of the defendants, tending to prove suicide, adduced, the question still remained—did the deceased come to his death through accidental means?

"In an action on a policy of accident insurance the burden rests upon the plaintiff to make a *prima facie* case in favor of a recovery by showing that the death of, or injury to the insured, was the result of violent, external and accidental means as required by the policy and the introduction of the defense of suicide does not shift the burden." 1 *C. J.* 496, § 284; *Globe Indemnity Co.* v. *Reinhart,* 137 *Atl. Rep.* 43. A presumption in law makes out a *prima facie* case, and a jury question arises by the introduction of evidence tending to overthrow that presumption. *Kruger* v. *Brown,* 79 *N. J. L.* 418.

The other grounds of appeal challenge the charge of the trial court. At the request of the plaintiff the court charged the jury as follows:

(Third) "In respect of every human death not appearing to be suicidal, there is a presumption in law that such death was not suicidal; such presumption applies in this case, and the burden of proof that the deceased came to his death by suicide rests upon the defendant."

This excerpt from the charge contains harmful error. The burden of proof that deceased committed suicide did not rest on defendant. The burden of proof rests on the plaintiff and never shifts to the defendant. If, in attempting to discharge that burden, the plaintiff does not make out a *prima facie* case, a nonsuit should be entered. If a *prima facie* case be made out, it is the duty of the defendant to submit evidence to offset the plaintiff's case and where there is new matter pleaded by the defendant, it is his duty to go forward

with the new matter, but the burden of proof in this and any other case remains where it was at the outset. The issue here is—did the plaintiff's decedent meet his death by the accidental means as limited in the policy?

"The introduction of the defense of suicide does not shift the burden although the presumption in favor of sanity is, in the absence of contravailing proof, sufficient in itself to establish *prima facie* that death occurred otherwise than by self-destruction." 1 *C. J.* 496, § 284; *Bernick* v. *Illinois Com. Men's Association*, 175 *Ill. App.* 511; *Whitlatch* v. *Fidelity and Casualty Co.*, 149 *N. Y.* 45; *Hill* v. *Central Accident Insurance Co.*, 209 *Pa.* 632; *Weil* v. *Globe Indemnity Co.*, 179 *App. Div.* 166.

The following is the plaintiff's sixth request which the court charged:

(Sixth) "In discharging the burden of proving that the deceased came to his death by suicide as expressed in one policy and by self-destruction as expressed in the other, the defense cannot prevail through the mere proof of circumstances which render the conclusion of suicide probable if in the case there are other circumstances which render it equally probable that the death was not suicidal."

This charge contains reversible error. When the court said, "in discharging the burden of proof, that the deceased came to his death by suicide or self-destruction, &c.," that statement put the burden on the defendants and manifestly the defendants below had no such burden. As has been said, the issue was not—did the deceased commit suicide? —but throughout the trial, from the beginning to the end, the issue was—did the deceased meet his death by the accidental means against which the contract of insurance insured?

Now as to the remainder of this portion of the charge, the court said, the defense cannot prevail through the mere proof of circumstances which render the conclusion of suicide probable if in the case there are other circumstances which render it equally probable that the death was not suicidal. An analysis of this instruction to the jury shows it to mean that if the proofs on the one side as against the other be coequal, there

should be a finding for the plaintiff. This is error. Where the proofs presented by each side turn out to be equally persuasive on the issue in the case, it is the duty of the jury to find for the defendant.

It is fundamental that when a plaintiff has established a *prima facie* case the defendant is bound to contravert it by evidence or suffer judgment. When evidence is submitted by the plaintiff on the one hand and by the defendant on the other, then the question arises as to whether the burden of proof has been sustained by the plaintiff upon whom it has rested from the beginning. It is not shifted by the proceedings during the trial, and the jury should be instructed that all material facts tendered by the moving party must be established by that party by a preponderance of the evidence.

The eleventh and twelfth requests which the court charged are as follows:

(Eleventh) "If the deceased, without any intention to destroy himself, ignited the burners of the gas range and came to his death through the exhaustion of the oxygen in the room necessary to the continuance of his life and which exhaustion was produced by the combustion of the gas so ignited, his death was not thereby suicidal."

(Twelfth) "If the deceased, without any intention to destroy himself, ignited the burners of the gas range and the same afterwards extinguished by the overflow of water on such burners, or by the exhaustion of oxygen in the room resulting from such combustion, or by any other means which the deceased did not intentionally induce, and thereby a free flow of unignited gas from the burners resulted in causing his death, in those circumstances the same was not suicidal."

In these excerpts of the charge the statement of the court to the jury was predicated upon facts which were not in evidence. Juries should be instructed on the proofs in the case and should not be permitted to wander into the field of speculation or guess. There was no testimony in this case to support the postulates contained in the charge complained of. The charge contains unproved assumptions and the brief of the plaintiff-respondent frankly admits it. There was no

testimony that the burners in the gas range had been ignited and that the oxygen in the room had been exhausted nor that the burners had been extinguished by the overflow of water from the pot for boiling water and the like. It is error in law if a fact is said to be in proof where there is no testimony to support it. *Gerety* v. *New York and New Jersey Railroad Co.,* 89 *N. J. L.* 175; *Smith and Bennett* v. *State,* 41 *Id.* 370; *Heindel* v. *Hetzel,* 82 *Id.* 155. This applies alike to criminal as well as civil cases.

The plaintiff here, in order to recover, must prove by a preponderance of evidence that her insured came to his death by accidental means within the terms of these policies. Now the test of the defendants' liability to pay under these circumstances was not the bare fact that her insured died but that he died by accidental means and so she has the burden of proving it. The burden of going forward frequently changes but the burden of proof, that is, the problem of persuading or convincing the jury that the plaintiff is entitled to recover, remains with the plaintiff throughout the case.

The judgments under review will be set aside and a *venire de novo* allowed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TREN-CHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 15.