WILLIAM VAN BERNUM, petitioner-appellant,

*v.*

EMILY ANTOINETTE VAN BERNUM, defendant-respondent.

[Argued May term, 1947.   Decided September 25th, 1947.]

*Mr. Anthony P. LaPorta,* for the petitioner-appellant.

*Mr. Leon Horowitz,* for the defendant-respondent.

The opinion of the court was delivered by

WACHENFELD, J.

The husband, a bartender, was married to the defendant on May 26th, 1929.  A son was born in 1931.  After their marriage they lived in Grantwood, New Jersey, and the path of matrimony ran none too smoothly.  There were four or five separations, with charges and counter-charges.  In April, 1935, the wife left the husband following an incident and moved to New York with her parents.  There was a reconciliation and a financial transaction which need not be gone into.  There was litigation in New York and on November 1st, 1935, the New York Supreme Court committed the son to the wife's custody and provided for certain rights of visitation.  On May 8th, 1940, a New York court made an order

in abandonment proceedings wherein the husband was required to pay $8 a week for the support of his son. The parties have not lived together since September 18th, 1935, and the wife has had no support from her husband during that time.

The petition, as amended, was for a divorce based on adultery and desertion, and the defendant, the wife, counterclaimed for divorce upon the grounds of constructive desertion and adultery. The wife has not appealed although her counsel in his brief contends that this court should direct a decree for a divorce in her favor based on desertion. The matter is not properly before this court and cannot be considered excepting indirectly as it reflects itself in the appeal taken by the husband.

The husband continued to live in New York in the hopes of bringing about a reconciliation, but after a trip to Germany in 1939 he lived in Bergen County and after that in Hudson County.

The husband's claim of desertion was dismissed by the Advisory Master below principally because domiciliary requirements were absent. In this respect we concur. The situation with reference to the charge of adultery, however, is different. The amended petition charged:

"The petitioner has been informed and verily believes and therefore charges upon information and belief that the defendant * * * committed adultery with a man whose name is unknown to your petitioner at No. 383 160th Street, in the Bronx, City of New York * * * from on or about the 15th day of May, 1942 to about the 28th day of April, 1944 * * *."

The Advisory Master, although he believed most of the testimony of the witnesses offered by the husband as to adultery, nevertheless denied relief because in his opinion there was no proof of inclination.

The wife admits that while she acted as superintendent and janitor of the apartment in question, she employed various men at different times for the doing of necessary work. It is significant, however, that they were not produced at the trial.

The testimony of two disinterested witnesses was most impressive. James F. Reynolds, an attorney and managing agent for the apartment, said that the wife admitted to him upon interrogation that she did not live alone but she was going to live with "her husband and son" and she actually introduced a man as her husband whom the witness described in detail. He further testified that he was required to visit the premises on occasions and that he went there approximately once a week. He called upon the superintendent and often saw a man in the wife's apartment and it was the same man who was introduced to him and whom he met as her husband. They were tenants from May 18th, 1942, to July 31st, 1942, and from August 1st, 1942, she became superintendent, with their apartment rent-free and an additional $5 per month as compensation. This status continued until October 1st, 1943, at which time she asked to be relieved of her duties as superintendent because she was then acting as a nurse for a doctor and hadn't the time to continue with her former position. He saw the wife and the man presumed to be her husband at least once or twice a week in various modes of informal attire and she referred to this man as her husband in the man's presence.

The witness Mrs. Esposito corroborates much of this testimony. She testified she knew the wife and also the man whom she lived with as her husband. She often talked to them and had occasion to go into their apartment when she was superintendent. They lived there as man and wife and the boy called the man "Daddy" on numerous occasions.

There was an attempt made to offset this testimony by witnesses for the defendant consisting of a scrubwoman and the wife's father, but we take cognizance of the absence of the important witnesses who could have been produced. The men who she admitted helped her in her work at the apartment were absent and so also was her son, who was alleged to have lived there and who now was admittedly sixteen years of age. In reference to him she was asked this question: "And your son is not in court to disprove that?"

Answer: "Well he could, he be here he certainly show you all up. [*sic.*]"

The importance of her son as a witness is stressed by the respondent's answer, and it was further affirmed on oral argument when her counsel admitted his testimony would be very material. His failure to appear at least gives some indication as to where the truth resides. "The non-production of evidence that would naturally have been produced by an honest and therefore fearless claimant permits the inference that its tenor is unfavorable to the party's cause." *Wigmore on Evidence (3d ed.)* § 285.

We conclude that this woman lived in open adultery for a long period of time and think the proofs show it to a moral certainty.

In *Nucera* v. *Nucera, 134 N. J. Eq. 347,* this court said:

"There is no proof of inclination to commit adultery in the form of evidence of caressing, or things of that sort, and the case rests entirely upon the prolonged visits of the defendant to Hargroves' home. We are of the opinion that the evidence is sufficient to support the finding of guilt upon the adultery charge."

Similarly in the present situation. The length of time during which the unknown man occupied the position of husband of the wife and father of her child indicates quite conclusively what the intimate relationship was and leaves little room for doubt.

The court below directed the petitioner to pay to the defendant or to her solicitor a further counsel fee of $500. Under the circumstances, we think this award excessive. It should be reduced to $200.

The decree below is reversed, and the record remanded to the Court of Chancery for a decree in accordance with this opinion.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, BODINE, DONGES, HEHER, COLIE, WACHENFELD, EASTWOOD, BURLING, WELLS, DILL, FREUND, McGEEHAN, McLEAN, JJ. 13.