68 N.J. Super. 373 (1961)
172 A.2d 449
MATTIE BURNEY, ALSO KNOWN AS MATTIE MAE COLEY, PLAINTIFF-APPELLANT,
v.
WASHINGTON NATIONAL INSURANCE COMPANY, A CORPORATION OF ILLINOIS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 29, 1961.
Decided July 10, 1961.
*374 Before Judges FOLEY, LEWIS and HERBERT.
Mr. William H. Burns, Jr., argued the cause for plaintiff-appellant (Messrs. Karkus, Kantor & Burns, attorneys).
Mrs. Annamay T. Sheppard argued the cause for defendant-respondent (Mr. William O. Barnes, Jr., attorney).
The opinion of the court was delivered by LEWIS, J.A.D.
Plaintiff sought recovery under the double indemnity provisions of a life insurance policy. Judgment of dismissal, on motion of defendant, was granted at the close of the case. Plaintiff appeals to this court, and urges that the trial judge erred (1) in denying plaintiff's *375 motion for judgment, and (2) in granting defendant's motion for judgment.
The pertinent contract terms in the double indemnity section of the insurance policy read:
"ACCIDENTAL DEATH BENEFIT  Upon receipt of due proof that the Insured * * * sustained accidental bodily injury, of which, except in the case of drowning or of internal injuries revealed by an autopsy, there is a visible contusion or wound on the exterior of the body, occurring after the date of the Policy, and resulting in the death of the Insured * * *
No Accidental Death Benefit will be paid if the death of the Insured results wholly or in part from one or more of the following causes: * * * (b) committing or attempting to commit, or participating in an assault or felony; * * * (h) injuries intentionally inflicted on the Insured by any person, while sane or insane; * * *."
The facts are not in dispute. The defendant, Washington National Insurance Company, issued its policy number 06319818, in the face amount of $500, insuring the life of Robert Burney, Jr. This policy was in effect on August 4, 1958, the date on which the insured died from a pulmonary hemorrhage caused by a bullet wound. Mattie Burney (also known as Mattie Mae Coley), the mother of Robert, plaintiff herein, was the designated beneficiary. The insurance company delivered to the plaintiff a check for the principal amount of the policy, but declined to recognize an obligation under the double indemnity provisions of their contract until "after it was proved out when the trial came off it was accidental death." On the reverse side of the check, above plaintiff's mark, which was witnessed by an employee of the undertaker, was a printed form of release. Plaintiff testified that she could not read or write. We need not consider the testimony or the arguments of plaintiff in her brief that this release was a nullity and void at law. This point was not argued on appeal and counsel for the insurance company in its brief took the position that "defendant does not argue the efficacy of the release to bind the plaintiff herein."
*376 At the trial, the plaintiff offered only her own testimony as to the circumstances surrounding the death of Robert Burney, Jr., and, under direct examination, testified that she was not present when her son was killed. Under cross-examination, it was developed that Mrs. Burney, on the evening of August 4, 1958 had been struck by her son-in-law, Eugene Jackson. Later the same evening, she related this happening to her daughter, the wife of Jackson; this conversation took place in the yard of the Burney home. Decedent had not been present at the time of the alleged assault and battery upon his mother. When, however, his mother reported the incident to her daughter, he was on the porch. After the daughter had left the premises, decedent, without a word to anyone, walked away from the porch. Within a few minutes thereafter, plaintiff heard a pistol report from the street and heard her daughter scream. She ran out of the house, and found her daughter wounded by a bullet, in the left side, and prostrate on the road. She passed her son-in-law, who was running from the direction of the daughter toward plaintiff's home; she did not know if her son-in-law had a pistol, but testified, "I guess he did. He had done shot her." Plaintiff did not witness the slaying of her son, and had no personal knowledge of the way in which he met his death except that he was shot and died as a result of a bullet wound  "He was between where my daughter was shot and where I met my son-in-law at." It was also elicited from the plaintiff that she had a gun but did not know if the daughter had taken the gun on August 4, 1958.
The court reserved its decision on defendant's motion to dismiss which was made at the conclusion of plaintiff's case, and "simultaneously therewith or immediately thereafter offered the plaintiff the opportunity of reopening for the purpose of showing more of the existing facts which surrounded the happening, and plaintiff relied upon the Magich case, particularly the last sentence in paragraphs (1-5) of the opinion." The evidence proffered by the defense consisted *377 solely of proof that plaintiff had endorsed, by her mark, the check which bore the printed form of release above her endorsement. Cross-motions for judgment were made and considered. Plaintiff's motion was denied. The court then granted the defendant's motion for judgment and withdrew the case from the jury.
The rationale of the court's conclusion can best be stated in the words of the trial judge:
"* * * that although there are some facts which have been introduced in the case disclosing the probable location of the unfortunate occurrence, the same facts likewise create circumstances which could not probably lead one to satisfactorily conclude that the decedent died by accidental means rather than as the result of a wound intentionally inflicted upon the insured by another person or by himself.
The facts adduced disclose the wounding by bullet wound of the sister of the decedent apparently on the same street that the decedent suffered his mortal wound, but yet quite probably at such a distance from the location of the decedent that it would in all probabilities eliminate the thought of an accidental wounding. Whether the sister and brother were shot with the same weapon is not disclosed. Whether they were shot at the same location or by the same person or at the same instantaneous moment is not disclosed.
It is the thought of the court that the plaintiff has the burden of proving sufficient facts which would permit the court or a jury to deal within the realm  to determine within the realm of probabilities that the shooting, mortal shooting, was accidental and not done intentionally by some other person, rather than to leave the status of the facts in such circumstances as would require the court or the jury to deal in speculation."
An examination of the entire proceedings leads this court to the same result. The record before us is devoid of evidence from which it could be reasonably inferred that the decedent met his death by accidental means; to the contrary, the proofs established that reasonable minds could not honestly differ as to the conclusion that decedent had participated in an assault or felony, or that his demise was directly attributable to injuries intentionally inflicted, within the intendment of the exceptions stated in the insurance policy. *378 Plaintiff places reliance upon the New Jersey decisions Magich v. John Hancock Mutual Life Insurance Company, 32 N.J. Super. 33 (App. Div. 1954) and McNamara v. Metropolitan Life Insurance Company, 117 N.J.L. 323 (Sup. Ct. 1936). The McNamara case involved a drowning, and evidence was adduced from which an accidental death could be inferred. This court decided the Magich case, wherein the contention was suicide. The testimony revealed considerable facts which would support a deduction that an accident had occurred. This was further buttressed by the recognized presumption against self-extinction. We, in that case, said: "The burden rested upon the plaintiff to show by adequate proofs that death resulted from accidental causes as defined in the terms of the policy."
The numerous out-of-state decisions which plaintiff asks us to consider and apply in the case sub judice stand for the proposition that:
"Where in an action on the double indemnity clause of a life policy limiting the insurer's liability to instances of death caused by external, violent, and accidental means, it is shown that death is a result of external violence, there is a presumption that the violence was due to accidental means, so as to support a recovery in the absence of affirmative proof to the contrary by the insurer." (12 A.L.R.2d, infra.)
This presumption has been supported by a preponderance of federal and state decisions. For an assemblage of these authorities, see Annotation, 12 A.L.R.2d, Insurance  Death by Accidental Means, p. 1264, sec. 5, at p. 1279 (1950), and A.L.R.2d Supplemental Service 1960-1961; 9 Wigmore on Evidence (3d ed. 1940), sec. 2510(c), p. 397. Note, also, a restatement of the presumption in 8 Couch, Cyclopedia of Insurance Law, sec. 2230, p. 7237 (1931), in particular at p. 7240, the comment:
"More specifically stated, if it be established that one insured against accident has sustained a physical injury, and there is no proof which clearly establishes the nature of the cause thereof, a *379 presumption arises that it resulted from accident, rather than that it was self-inflicted by way of an attempt at suicide, or was the felonious act of a third person."
and the several documented authorities.
The appellate courts of this State have not specifically adopted or rejected this presumption which has received, in other jurisdictions, general acceptance. We are mindful of a county Circuit Court's decision in Cramer v. John Hancock Mutual Life Insurance Company, 18 N.J. Misc. 367, 372 (1940), wherein Judge Jayne, after referring to a collection of out-of-state authorities holding that "death having been caused through external and violent means, it will be presumed that the death was caused by accidental means," then said: "In our own State no such presumption is recognized." citing Kresse v. Metropolitan Life Insurance Company, 111 N.J.L. 474 (E. & A. 1933). A suicide exclusionary clause was the subject of litigation in the Kresse case, and that decision today may be considered rather tenuous upon which to negate generally such a prevailing presumption. A re-evaluation of the Kresse and Cramer decisions, however, must await a proper case before our appellate courts. We observe that these cases were not mentioned by our Supreme Court in Korfin v. Continental Casualty Company, 5 N.J. 154 (1950); or in Shields v. Prudential Insurance Company of America, 6 N.J. 517 (1951).
If, in the case at bar, the family tragedy had been occasioned by an accident, it would be reasonable and logical to expect the two eye-witnesses  surviving principals  to so proclaim and come forward to testify. They were related to the plaintiff, her son-in-law (who was paroled from prison the previous July) and her daughter, and there is nothing in the record to indicate that they were not available to plaintiff for testimony at the time of the trial. Their unexplained absence as witnesses permits an inference that their testimony would have been unfavorable to the plaintiff. *380 Our courts have, on many occasions, recognized and invoked such an impelling inference, which, in the present case, militates strongly against plaintiff's asserted claim. See Schultz v. Hinz, 20 N.J. Super. 346 (App. Div. 1952); De Baro v. Gabryelski, 14 N.J. Super. 50 (App. Div. 1951); Series Publishers, Inc., v. Greene, 9 N.J. Super. 166 (App. Div. 1950); Van Bernum v. Van Bernum, 140 N.J. Eq. 413 (E. & A. 1947); Robinson v. Equitable Life Assurance Society of United States, 126 N.J. Eq. 242 (E. & A. 1939); Annotations, 70 A.L.R. 1326, and 5 A.L.R.2d 893; 2 Wigmore on Evidence (3d ed. 1940), Failure to Produce Evidence, secs. 285-290, p. 162 et seq.
Instances are legion where the judiciary has pronounced the guiding principle to be followed: "Where fair minded men might honestly differ as to the conclusions to be drawn from the proofs, the questions at issue should be submitted to the jury." Scarano v. Lindale, 121 N.J.L. 549, 550 (E. & A. 1938); Gindin v. Baron, 11 N.J. Super. 215, 218 (App. Div. 1951); De Rienzo v. Morristown Airport Corporation, 28 N.J. 231, 239 (1958). This test plaintiff did not meet.
We decide the controversy presently before us upon the entire record, which does not reveal a prima facie case presenting a genuine issue of fact for a jury.
For the reasons herein expressed, the judgment of the court below is affirmed.