F. F. Davison v. The London & Lancashire Fire Insurance Company of Liverpool, England, Appellant.

*Insurance—Contract—Cancellation—Conditions.*

A contract of insurance requires the consent of both parties to cancel or rescind it, unless by its own terms a right to do so is given to either party alone, and if such right is given upon conditions the conditions must be fully complied with before the right can be exercised.

Where goods have been removed from the building in which they were originally insured, and are destroyed by fire, the insured has no claim against the insurance company unless he proves affirmatively that the policy had been renewed or extended so as to cover the goods in their new place; and as to this the burden of proof is upon the insured.

Where goods have been removed from the place in which they were originally insured, a payment or tender of a rebate or return premium is not a condition precedent to the insurance company's right to defend against the collection of the policy.

Argued Oct. 31, 1898. Appeal, No. 32, Oct. T., 1898, by defendant, from judgment of C. P. No. 1, Allegheny County, Sept. T., 1896, No. 197, on verdict for plaintiff. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Assumpsit on a policy of fire insurance. Before STOWE, P. J. The facts appear by the opinion of the Supreme Court.

The trial judge charged in part as follows:

This policy ceased to have any legal effect at the time the property was removed to Shousetown, and so far as the company was concerned all it had to do was to do nothing; if the property was destroyed down there, the company would not be liable, under the assumption that nothing had taken place between the assured and the company.

Both parties being aware of that fact, the plaintiff went to the agents of the defendant, according to his story; notified them (whether before the time that this alleged renewal took place or after is immaterial, as far as the fact is concerned) and gave them to understand that the property had been removed, and wanted to have the policy extended, and now the whole question, so far as it affects the jury in this case, is whether or not there was an actual extension of that policy for property that had been removed from Centre avenue to Shousetown. That is the great bone of contention here. The plaintiff alleges that he went there to announce the fact that the property had been removed (or that they knew it before), and that he then was given to understand that the policy had been renewed and would be kept in force upon the property where it was located in Shousetown, and he undertakes to sustain that by the entries upon the books of the company and by testifying to what was said to have occurred at that time. If you find that fact to be true, then there was an actual renewal or extension of this policy to the property in Shousetown, and it has exactly the legal effect, as far as this case is concerned, as if it had been indorsed on the policy or he had taken out a new policy on the property in his new location; but upon that question you have to look at the testimony on the other side of the case. That is denied. They say that the plaintiff was there; that there was

a talk about renewing, and the entry was made in the book of
that, as a sort of memorandum, but it was a conditional renewal,
subject entirely to the approval of the company, and that the
company never did approve of it. If that is true, then this
policy never took effect upon the property in Shousetown, be-
cause if that was conditional, although it may upon the books
have been an absolute one, yet if the understanding was between
the parties that this was not to take effect unless the company
approved it, then it ceased to have any effect, and the policy
never was extended, and, of course, in that case, the verdict
should be for the defendant. [That is the controlling question
in this case; that is really the only question that is worth the
consideration of the jury: if there was a renewal, he is entitled
to a verdict for the amount of the policy, it being uncontroverted
that the loss was total and that the value of the goods was more
than the amount of the policy. If it was not, if it was merely
conditional, and so made known at that time and so understood
by the plaintiff, then your verdict should be for the defendant,
but, so far as this case is concerned, if there was a renewal,
then something more is to be proved than has been established
by the defendant, in the way of cancellation of this policy.

It is alleged that it was conditional; that after they received
word from the company that it should not be renewed, or rather,
a direction to them to cancel the policy, they notified by tele-
phone the brother of the plaintiff, which is denied—as to the
legal effect of it—never was received. Somebody apparently
represented him. A letter was written to Shousetown which
may or may not have been received. The mailing of a letter
to a party is evidence that he received it in the ordinary course
of mail, but it is only prima facie, and if it is not received it
has no effect whatever. If I mail a letter to any of you gentle-
men, I can prove the writing and mailing, and then it devolves
on you to prove that you did not get it, but the fact that I
mailed it is no absolute proof of the fact that you got it; it is
prima facie evidence, as we call it, but if the fact is alleged that
it never was received, then it is for the jury to determine that
question; but I apprehend that those matters are immaterial,
particularly because there is not a shadow of proof, as I under-
stand it, that would indicate that by any of those messages,
either by telephone or letter, defendant's agents undertook to

return or pay back the return premium that is necessary unless it has been waived by the party. If a party undertakes to cancel a policy, then it is necessary to pay or offer to pay or have the right to pay waived. There is nothing in this case that would justify the jury in saying that they offered to pay it back, until after the fire I mean, and then it is too late ; but at the time, or within a reasonable time after the canceling of this policy, there is nothing to indicate that the parties even indicated an intention to pay back the premium.] [2]

Plaintiff's second point and the answer thereto were as follows :

There being in the policy of the suit a provision that "if this policy shall be cancelled as hereinbefore provided, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy," and the defendant having claimed in its affidavit of defense that the plaintiff had delivered up and surrendered this policy to defendants in response to a demand from the company, and that the same had been cancelled, and it being seen that the unearned portion of the premium was not returned, there was no legal cancellation. *Answer :* We cannot affirm this point as it stands, but if you believe that there was, as claimed by the plaintiff, an actual and absolute renewal, or extension of this policy upon plaintiff's property in its new location, then defendant having failed to show either payment or an offer to pay back the return premium before the fire plaintiff is entitled to recover. [1]

Verdict and judgment for plaintiff for $2,181.66. Defendant appealed.

*Errors assigned* were (1, 2) above instructions, quoting them.

*Willis F. McCook,* for appellant.

*W. K. Jennings,* with him *Henry G. Wasson,* for appellee, cited Ætna Ins. Co. v. Maguire, 51 Ill. 342; Home Ins. Co. v. Tighe, 11 W. N. C. 15 ; First Nat. Fire Ins. Co. v. Isett, 11 W. N. C. 558; Van Valkenburgh v. Lenox Fire Ins. Co., 51 N. Y. 465.

OPINION BY MR. JUSTICE MITCHELL, January 2, 1899:

In the instructions to the jury on the subject of the return of

a proportionate part of the unearned premium by the company to the plaintiff, as a condition precedent to a cancellation of the policy, the judge in the haste of the trial overlooked the vital distinction between a cancellation by act of the company and by act of the insured. A contract of insurance, like any other, requires the consent of both parties to cancel or rescind it, unless by its own terms a right to do so is given to either party alone, and if such right is given upon conditions they must be fully complied with before the right can be exercised. Hence it was held in Ins. Co. v. Tighe, 11 W. N. C. 15, that under a policy authorizing the company to cancel " on giving notice and refunding a ratable proportion of the premium," actual payment or acceptance by the assured of something as equivalent to actual payment must be proved to sustain a defense on an alleged cancellation. So in Ins. Co. v. Isett, 11 W. N. C. 558, where the words were that the policy should be cancelled on notice, " in which case the insured shall be entitled to claim a ratable proportion of the premium," it was held that a mere notice of intention to rescind by the company, followed by a registered letter containing the proper amount of return premium but which did not reach the insured until after a fire had occurred, was not sufficient. Appellant draws a distinction between cases like the former where the conditions are joined by the cumulative " and," and the latter where the acts of cancellation and refunding are at most to be cotemporaneous. It is not necessary to discuss the force of this distinction, as it is not material to this case.

The plaintiff's policy was made void by the removal of his goods to another building in another town. Cancellation is not an accurate term in regard to it, though it is the one used on several occasions by the parties. The policy was not cancelled but rendered nugatory and void by the plaintiff's own act. As the learned judge correctly told the jury, all that the company had to do to escape liability was to do nothing. The plaintiff had no claim under it unless he proved affirmatively that it had been renewed or extended so as to cover the goods in their new place. As to this the burden of proof was on the plaintiff, and he undertook to meet it by his account of what took place between himself and the defendant's local agents in the fall of 1895. This being denied by the agents made the issue on the

first branch of the case and was submitted clearly by the learned judge to the jury.

But there was a second issue made by the defendant that the policy had been actually surrendered and cancelled before the fire. It was admitted that in fact the policy had been returned by the plaintiff to the company, and was in its possession at the time of the fire. The defendant's agents testified that on notification from them to the company of the change of location of the goods, and that they were not now within what is known in insurance business as "Fire Protection," the company had refused to transfer the insurance and ordered the policy cancelled; that they had so notified plaintiff's brother by telephone, as previously directed by plaintiff; had also on November 19, notified plaintiff himself by letter which had not been returned to them, though bearing return directions to the postmaster; and that on November 22, they had received the policy by mail, cancelled it, returned it to the company and given the plaintiff credit on their books for the rebate. It appeared that he had had an account with them for seven or eight years. In rebuttal the plaintiff denied knowledge of the notice by telephone to his brother, and also the receipt of the letter, and testified that he had mailed the policy to the agents "to have the transfer made which had already been made on the books," though he sent no letter of directions to that effect with it, failed to explain the notable coincidence between the date of the letter which he denied receiving, demanding the policy, and the date of his mailing the policy to the agents, and from that time until the fire, four months later, made no effort to get the policy back, to pay the additional premium, or even to ascertain what was due. This explanation of the return of the policy, weak as it was, was probably sufficient to submit to the jury on the second branch of the case, but in submitting it the learned judge said "but I apprehend that those matters are immaterial, particularly because there is not a shadow of proof, as I understand it, that would indicate that by any of these messages, either by telephone or letter, defendant's agents undertook to return or pay back the return premium that is necessary, unless it has been waived by the party. If a party undertakes to cancel a policy, then it is necessary to pay or offer to pay or have the right to pay waived." This was material error. The defendant was not asserting a

cancellation of the policy on its own motion in virtue of its contract right, in which case the return premium would have been a relevant subject of consideration. But the policy had in fact been returned and cancelled, and the question for the jury was, had it been so returned in compliance with defendant's demand, because it had been rendered void by the plaintiff's own act in moving his goods, or had it been returned, as plaintiff attempted to show, because it had been renewed and extended to cover the goods in their new place, and was to be changed or rewritten accordingly. In the former view a question might subsequently arise of the plaintiff's right to a rebate on the premium but the payment or tender of such rebate was certainly not a condition precedent to the company's right to defend on the plaintiff's own act destructive of his policy. In the latter view that the policy was returned to have the new agreement written in, there would be no rebate due. In either view, therefore, the matter of rebate of unearned premium was wholly irrelevant and its introduction seriously injurious to appellant.

Judgment reversed and venire de novo awarded.