## HANSON v. ROYAL INS. CO.

(Circuit Court of Appeals, Sixth Circuit. December 3, 1919.)

### No. 3131.

1. INSURANCE ☞177—FIRE INSURANCE—POLICY—CONSTRUCTION—"EXPIRA-TION."

Where fire policy provided that if at the expiration of the policy, or if it should be canceled by the assured, the average time cotton under liability has been at risk shall exceed two days, the assured should pay an additional premium, and the insurer treated the policy at an end because the receiver was appointed for the assured, the insurer's claim to the additional premium can be sustained only on the ground that the receivership was equivalent to a cancellation of the policy by the assured; the term "expiration" in such a contract meaning expiration by lapse of time.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Expiration.]

2. INSURANCE ☞146(3)—FIRE POLICY—AMBIGUITY.

Where, under a fire policy, it was questionable whether the insurer was entitled to the additional premium claimed, the provisions creating an ambiguity, insurer has the burden of explaining the same.

3. INSURANCE ☞232—FIRE POLICY—ADDITIONAL PREMIUM—"CANCELLATION."

Where a fire policy provided that it should be void if any change other than by death of assured should take place in the interest, title, or possession of the subject of the insurance, and on a receiver being appointed for the assured the insurer declared the policy void, *held*, that such termination of the policy did not amount to a cancellation of the policy by the assured, so as to entitle the insurer to certain additional premiums.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Cancellation.]

Appeal from the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

The claim of the Royal Insurance Company was allowed in receivership proceedings against the Gulf Compress Company, and C. C. Hanson, the receiver, appeals. Order reversed, and cause remanded, with directions.

D. H. Bynum, of Indianapolis, Ind., for appellant.

Edward B. Klewer, of Memphis, Tenn., for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. The case, shortly stated is this: On September 1, 1907, the insurance company, by a series of policies, insured the compress company, during one year from that date, on account of its liability to carriers for loss or damage by fire upon cotton in bales at certain locations stated in the respective policies. The initial premiums were payable monthly at the rate of $1\frac{1}{4}$ cents for each bale passing through the compress, as shown by certain monthly statements required from the compress company. On May 30, 1908, while the policies were still in force, the compress company's property passed into the possession of a receiver appointed by the court below

in a creditor's suit. Each policy contained an agreement that, "unless otherwise provided by agreement indorsed hereon or added thereto," it "shall be void if * * * any change, other than by the death of an insured, take place in the interest, title, or possession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process or judgment or by voluntary act of the insured, or otherwise, or if this policy be assigned before a loss."

[1] On June 8, 1908, the insurance company gave notice to the carriers that—

"The Gulf Compress Company having been placed in the hands of a receiver, the policies * * * are null and void from and after the appointment of the receiver, and such action itself avoided the policies."

The premium agreement provided that—

"If at the expiration of the policy, or if the policy be canceled by the assured, the average time cotton under liability has been at risk shall exceed two days, the assured agrees to pay to the insurance company an additional premium of one-half cent per bale for each day or fraction thereof in excess of two days, on each bale of cotton for which the assured has been liable to the transportation lines."

The claim of the insurance company for this additional premium was allowed in the receivership proceeding. The propriety of this allowance is the only question here.

The only ground on which it can even plausibly be contended that the insurer is entitled to the additional premium is that what was done amounted to a cancellation of the policy "by the assured." That the receivership did not work an "expiration" of the policy within the meaning of that contract is clear. The term "expiration," as ordinarily understod in insurance contracts, and where not otherwise defined, means expiration by lapse of time. The policy contains nothing varying this ordinary meaning. Indeed, in the premium agreement quoted the expiration and cancellation of the policy are treated as wholly distinct from each other.

[2, 3] The insurer's actual contention is that the appointment of a receiver, and the latter's possession and operation of the compress company's plant effected a "change * * * in the interest, title, or possession of the subject of insurance," and that such avoidance of the policy, occurring as it did, through no fault of the insurer, amounted to a cancellation "by the assured." But were we to assume, for the purposes of this opinion, that the receivership did avoid the policies, we yet would be unable to agree with the contention that such avoidance amounted to a cancellation by the assured within the meaning of the premium provision; that is to say, within the intention of the parties. The additional premium is provided in either of but two contingencies—"expiration" of the policy or its cancellation "by the assured." The contingency of avoidance by the existence or occurrence of any one of the dozen or more conditions which in this, as in all modern fire insurance policies, effect avoidance, or the "ceasing" of the policy under another provision, are wholly omitted, although the natural course would have been to mention them if meant to be included. Such omission, in the view most favorable to the insurer, created an

ambiguity, the burden of explaining which was on the insurer, as the one who prepared and put out the contract. This burden has not been sustained.

The other provisions of the policy lend no support to the insurer's construction of the expression "canceled by the assured." So far as pertinent, they are opposed to it. The policy provides for its own cancellation in but one of two ways, viz. "at the request of the assured" at any time or "by the company" on five days' notice. Moreover, the return premium provision recognizes a distinction between cancellation and avoidance of a policy in the words:

"If this policy shall be canceled as herein provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned."

For if the three contingencies named were, in the minds of the parties, one and the same thing, there was no occasion to mention but one.

The omission from the premium provision of the contingency of the policy becoming "void" for any of the numerous causes declared to produce that effect is significant. We are constrained to the opinion that cancellation "by the assured" means a cancellation "at the request of the assured" in fact. The latter, so far from requesting cancellation, in fact tried to prevent it by assigning the policies to its receiver, consent to which was refused by the insurer, unless the receiver would guarantee payment of certain claimed premiums accruing before the receivership.

So far as authority for these views may be thought necessary, Davison v. Insurance Co., 189 Pa. 132, 136, 42 Atl. 2, is more or less in point. The conclusion we have reached makes it unnecessary to consider the other defenses urged by the receiver.

The order of the District Court is reversed, and the record remanded to that court, with directions to disallow the claims, so far as involved in this appeal.