Edward G. Budd B. & L. Assn., Appellant, v. Kinsella et al.

Argued October 15, 1930.

Before TREXLER, P. J.; KELLER, LINN, GAWTHROP, CUNNINGHAM, BALDRIGE and WHITMORE, JJ.

*Samuel L. Borton,* and with him *Walter E. Schembs,* for appellant.

*Horace Michener Schell,* for appellee.

OPINION BY CUNNINGHAM, J., April 15, 1931:

The proceeding below was attachment execution under which plaintiff sought to attach in the hands of The Pennsylvania Fire Insurance Company the sum of $204.75 alleged to be due from it to defendant, its insured, as an unearned or return premium. The question now involved is whether plaintiff was entitled to a summary judgment against the garnishee upon its answers to plaintiff's interrogatories. Deeming the answers legally insufficient to prevent judgment, plaintiff obtained a rule which the court below discharged and it thereupon appealed to this court.

We gather from the pleadings that the controversy

arose out of these circumstances: On March 10, 1928, Ronald J. Kinsella, the defendant, being the owner of a property in Upper Darby Township, Delaware County, occupied as a store and apartments, gave his bond, secured by a mortgage thereon, in the sum of $7,000 to the Edward G. Budd Building and Loan Association, plaintiff in the attachment and appellant herein. At the same time, The Pennsylvania Fire Insurance Company, garnishee and appellee herein, issued to Kinsella its policy upon the property insuring him against loss by fire for a term of ten years for a premium of $243.13; the policy, which contained a standard mortgagee clause (beginning: "Loss or damage, if any, under this policy, shall be payable to Edward G. Budd Building Association as mortgagee [or trustee], as interest may appear," etc.), was placed in the possession of the association as mortgagee. No assignment of the policy was ever made by the insured. Kinsella having defaulted upon his bond and mortgage, judgment was entered against him in Delaware County upon the bond on March 4, 1929, damages being assessed at $7,681.43; an execution issued with the result that the property was sold by the sheriff to plaintiff for $50 and the sheriff's deed to it was acknowledged May 2, 1929. By this change in the title to the property insured, which occurred as of the date of the acknowledgment and delivery of the sheriff's deed (Collins v. London Assurance Corp., 165 Pa. 298), Kinsella's insurable interest therein ended. Plaintiff forwarded the policy to the insurance company, where it now remains, and demanded payment of the unearned premium thereon, which, if the company is liable therefor, amounts to $204.75. Subsequently, an exemplification of its deficiency judgment was filed by plaintiff in the court below and an attachment execution issued against Kin

sella, in which the insurance company was named as garnishee.

The material interrogatory was whether the garnishee had in its possession when the writ was served "any return premium on cancelled insurance policy No. 107088......due the defendant, and, if so, ...... the amount of the same." In its answers the garnishee admitted the issuing of the policy to defendant with a mortgagee clause in favor of plaintiff; the purchasing of the property by plaintiff at sheriff's sale; and the forwarding of the policy to the garnishee by plaintiff. The averments of the answer which raise the questions now for disposition were: "The said Edward G. Budd Building and Loan Association has no legal right, power or authority to cancel the said policy of insurance and no request for the cancellation of the said policy has been made by the assured therein named, to wit, Ronald J. Kinsella; if there had been any cancellation of the said policy, which garnishee denies, the return premium as of the date of the sheriff's sale is in the sum of $204.75. ...... The said policy of insurance by reason of the sheriff's sale of the said premises and the execution and delivery by the sheriff of Delaware County to the Edward G. Budd Building and Loan Association of a deed for the premises has become and is void, as in and by the policy of insurance......it is provided, inter alia, as follows: 'This entire policy shall be void, unless otherwise provided by agreement in writing added hereto......(c) if, with the knowledge of the insured, foreclosure proceedings be commenced, or notice given of sale of any property insured hereunder, by reason of any mortgage or trust deed.' ...... Neither at the time the writ......was served nor at any time since has the defendant claimed from the garnishee any money or property on any account whatsoever, and there is no debt or demand in suit. ...... It avers that by reason

of the circumstances hereinbefore set forth its policy of insurance No. 107088 became null and void......and further averts that the said Ronald J. Kinsella the defendant has never tendered the policy of insurance to the garnishee for cancellation or requested cancellation thereof, and is advised by counsel that said policy having become void no cancellation thereof could be had if requested; that it is informed that the premium for the said insurance was paid by the said Ronald J. Kinsella when the said policy of insurance was obtained and that by reason of the facts in this answer set forth it has nothing in its possession belonging to the said Ronald J. Kinsella." The general effect of the answers was that, as the risk had attached, liability for the return of a part of the premium could arise only in the event of cancellation of the policy in accordance with its provisions therefor, and that it had not been cancelled but had been rendered void through the conduct of the insured in defaulting upon the mortgage and thus bringing about the foreclosure and change in title.

Plaintiff, by its writ, has stepped into the shoes of the insured and our inquiry is whether, under the facts as set forth in its answer, the insurance company was indebted to Kinsella in the amount of the unearned premium at the time the writ was served. It is apparent that issues both of law and of fact are raised by the answers. The question of law, whether the garnishee is relieved from all liability for the unearned premium because, as it contends, the policy became void by reason of the foreclosure proceedings, has not been ruled by the cases cited on either side. Its importance is obvious when attention is directed to the large number of foreclosure proceedings in which mortgagees are obliged to buy in the mortgaged premises. Some reference to the cases relied upon by counsel may, therefore, be justifiable at this point.

The case of Rafsnyder's Appeal, 88 Pa. 436, cited by appellant, and in which a return premium was recovered by a mortgagee, does not meet the issue here. The points of distinction are obvious: there a policy of perpetual insurance had been assigned to the mortgagee and the contest was between the vendee of the insured and the assignee of the original mortgagee; the insurance company did not question its liability to make payment to someone. Here there was no assignment of the policy; the interest of appellant was only such as it took under the mortgagee clause. Nor do the cases of Edwards, Admr., v. Franklin Fire Insurance Co., 3 W. N. C. 241, and Davison v. Insurance Co., 189 Pa. 132, cited by appellee, furnish precedents. In the first, the policy was similar to the one considered in the Rafsnyder case and had been assigned by the insured as collateral security for a ground rent; in the second, the insured had moved the personal property covered by the policy to a building in another town, thereby rendering the policy void. The company contended that, upon its demand, the policy had been surrendered and cancelled before the fire which gave rise to the controversy, but the plaintiff alleged that it had been renewed and extended to cover his property in its new location. The trial judge charged that the company could not defend upon the ground of surrender and cancellation because it had failed to show that it had tendered a return premium. In holding this instruction erroneous, the Supreme Court said: "But the policy had in fact been returned and cancelled, and the question for the jury was, had it been so returned in compliance with defendant's demand, because it had been rendered void by the plaintiff's own act in moving his goods, or had it been returned, as plaintiff attempted to show, because it had been renewed and extended to cover the goods in their new place, and was to be changed or rewritten accord-

ingly. In the former view a question might subsequently arise of the plaintiff's right to a rebate on the premium but the payment or tender of such rebate was certainly not a condition precedent to the company's right to defend on the plaintiff's own act destructive of his policy.''

Appellant also quotes the following from the text of 26 Corpus Juris, section 148, page 129: ''It has been held, however, that where a policy provides that it shall terminate on the commencement of mortgage foreclosure proceedings, and such proceedings are commenced, insured is entitled to the return of a ratable proportion of the premium.'' The case cited in support of this statement is Hayes v. U. S. F. Insurance Company, 132 N. C. 702; 44 Southeastern 404. An examination of the opinion indicates that the issue in that case was not strictly the right to recover a portion of the premium. The policy had been issued upon a barn and contents for one year and contained the usual provision that it should be void upon foreclosure proceedings being commenced. The interest of the insured in the property had not been correctly stated. A mortgage was foreclosed nine days after the policy was taken out; the fire occurred several months later but prior to the sale on the mortgage. The claim of the insured upon the policy was defeated upon the ground that his interest in the property had not been truly stated. The only reference to any right to recover unearned premiums was the following: ''Again, when the property was advertised for sale under the mortgage soon after the insurance, this terminated the insurance, by the agreement in the policy; and the insured, in good faith, should at once have gone to the agent of the insurer, and applied for cancellation of the policy and the return of a ratable proportion of the premium.''

There are decisions to the effect that there is no right

to a return of any part of the premium where the policy has become void "for breach of a warranty or condition subsequent." Elder v. Federal Insurance Company, 213 Mass. 389; 100 Northeastern 655, in which it was provided in the policy that the automobile thereby insured should not be used for carrying passengers and there was a breach of that warranty, is an illustration of such cases. The principle is thus stated: "The policy attached, and while the premium covered the life of the policy if its terms were complied with by the insured, the plaintiff could not through his voluntary breach deprive the defendant who is without fault, of the full benefit of the contract." Our own case of Healy v. Stuyvesant Insurance Company, 72 Pa. Superior Ct. 168, is similar. That was an action in which it was sought to recover an unearned premium upon a policy, insuring an automobile truck against damage by fire, upon the ground that the insured had cancelled the policy for the reason that he had placed the insurance elsewhere, but plaintiff was nonsuited because he had not complied with the condition in the policy requiring its surrender upon cancellation. It was argued that notwithstanding such failure the insured was entitled to recover for the reason that the policy had become void when a policy was procured in another company. In affirming, this court said: "When a policy expressly stipulates that the taking out of other insurance without the consent of the company shall render the policy void the insured is not entitled to a return of his premium merely because he has violated the covenants of his policy." From this review of authorities it is apparent that it has been consistently held that no part of the premium is recoverable if the policy has been rendered void "through the conduct of the insured," or "his own act in moving his goods," or his "voluntary breach or violation of the covenants

of his policy." There is no suggestion of fraud or misrepresentation in any of the transactions here involved, or of any affirmative misconduct or action on the part of the insured in violation of the terms of the policy. No case has come to our attention in which it has been held that failing to pay a mortgage in accordance with its terms (a situation which may sometimes arise without fault on the part of the mortgagor) is such a "voluntary breach or violation of the covenants of the policy" as will justify the insurance company in declaring it void and retaining, against the demand of the insured, the entire premium. As applied to this case, the proposition would be that the company, although it had carried the risk for less than a year and a half out of a ten-year term, may retain $204 out of a total premium of $243. We do not understand, however, that the garnishee takes a position apparently so inequitable. Its counsel, speaking for it and other fire insurance companies, advised us at the oral argument that when a mortgagee becomes the purchaser at sheriff's sale of an insured property, the practice of the companies is to place a rider on the policy providing in effect that, as the insurable interest of the original assured has ceased by reason of the sale and the mortgagee has become the owner of the property, the company agrees to recognize the mortgagee as the assured under the policy but without any liability on the part of the company to pay the mortgagee any return premium in the event of the subsequent cancellation of the policy. It is our understanding that the garnishee is willing to attach such a rider to the policy here in question. The position of appellant, however, is that it is entitled, under the answers, to a judgment for the amount of the unearned premium.

The proposition of law that the policy became void by reason of the foreclosure proceedings is not the

only matter set up in the answer. It is also therein averred that the mortgagee had "no legal right, power or authority to cancel the policy" and that Kinsella, who as the assured had paid the premium, had never tendered the policy for, or demanded, cancellation. Assuming, as we must for present purposes, the truth of these averments, we are of opinion that they are sufficient to prevent a summary judgment. No cancellation was attempted by the company and the provision of the policy relative to cancellation by the insured reads: "This policy shall be cancelled at any time at the request of the insured; in which case the company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time." No right of cancellation is given to a mortgagee and its admitted surrender of the policy to the garnishee would seem to have little, if any, bearing upon the question now involved. Appellant is seeking to recover, not upon any direct liability of the insurance company to it, arising out of the surrender by it of the policy, but upon the theory that the company is indebted to appellant's judgment debtor. We, however, express no opinion upon the ultimate effect of the surrender by appellant of the policy as the facts developed at the trial may place a different aspect upon this matter.

In attachment execution the general rule is that judgment cannot be entered on the answers to interrogatories unless they contain, either expressly or by necessary implication, a clear and unequivocal admission of indebtedness or of possession of assets belonging to the debtor, and in doubtful cases the parties should be sent to a jury. Under the settled rule, we do not reverse in an appeal of this nature unless the right of the plaintiff is clear, assuming the facts set forth in the answer to be true: Smith v. Brockway

258

Motor Truck Corp., 302 Pa. 217, and cases there cited.

We think this is a case in which all the facts relative to the action or non-action of the assured and all the circumstances of the surrender of the policy should be fully developed by a trial and we, accordingly, refrain from further discussion of the legal principles apparently involved.

The appeal is dismissed and the record remitted for further proceedings.