MICHELE JULIANO, PLAINTIFF, v. EDMUND ABELES, GUS FECHNER, JR., AND FIDELE AMBRUSCIO, DEFENDANT.

Argued May 1, 1934—Decided August 17, 1934.

Before Justices TRENCHARD, HEHER and PERSKIE.

For the rule, *Harold Simandl.*

*Contra, Raymond Dawson.*

The opinion of the court was delivered by

HEHER, J. This action is in tort for negligence. Plaintiff suffered personal injuries as a result of a highway intersection collision between two motor vehicles, in one of which he was a passenger. He was given a verdict in the sum of $500, and he seeks a new trial upon the ground that the award is grossly inadequate. While the record contains a certificate of the trial judge that he denied an "application for a new trial applied for within time," the parties agree that the application denied was for a rule to show cause why a new trial should not be granted. The instant application is made under rule 123 of this court, which provides, *inter alia,* that "if such rule shall be refused by the trial judge, application may be made to the court as heretofore."

These facts were undisputed: On September 2d, 1931, plaintiff suffered, in the opinion of the physicians who treated him, permanent injuries to an arm and shoulder. He sustained also a linear fracture of the skull over the parietal bone "with a slight depression of the inner table." The trial took place on January 15th, 1934, more than two years after the occurrence of the injury, and there were then, in the opinion of his physician, whose credibility was not impeached, indisputable evidences of "chronic" and permanent injuries. Scar tissue formed in the healing process, and some ankylosis of the joint, so he testified, had permanently impaired the function of the arm. Plaintiff was confined to a hospital for seven weeks, during six of which he was bedfast, and thereafter he was confined to his home for two or three months. There were subjective symptoms of headaches and dizziness which, in the opinion of his physician, were the consequences of the head injury, and he insisted that the injuries had incapacitated him during the whole of the intervening

period. The weight to be given to this latter testimony was, however, peculiarly within the province of the jury. His expenditures were $200 for medical attention and $147 for hospital service. The reasonableness of these charges was not questioned. At the time he sustained the injuries in question, he was in receipt of a weekly wage of $48.

This medical testimony was not seriously challenged. At one point counsel for defendants, when he found that his expert medical witness was not in court, announced that he was "willing to close without him if he does not arrive." He was later called, and it developed that his conclusions, which in the main differed from those of plaintiff's medical witness only as to permanency and the degree of disability, were based upon a single examination of plaintiff, made on October 17th, 1931. He testified merely to the opinion formed then that plaintiff "might be disabled a month or so more." He said that "functionally there was no impairment at the time that I saw him," and that disability resulting from a fracture of the skull "is problematical to a certain extent; it is the way he reacts to it." The evidence adduced from plaintiff's physician as to his physical condition at the time of the trial, therefore, stood uncontradicted.

Moreover, the trial judge refused to permit plaintiff, after he had closed his case, but before defendants had called their medical witness, to introduce the testimony of two medical experts who had lately examined him, on the grounds that he had closed his case without reserving "any right to put on the doctors," and, in the opinion of the court, he had "covered the case." But when the plaintiff sought, before resting, to reserve the right to call, before the close of the case, these expert witnesses, who had not then arrived, the court observed: "I do not think you need any other doctor; the doctor who has testified examined him up to recently." The trial judge did not rest his action upon plaintiff's alleged unexplained and unexcused failure to comply with the rules of orderly procedure. It was based upon the view, clearly expressed, that plaintiff had adequately covered the medical phases of the case, and that the offered testimony was unneces-

sary. This was an arbitrary curtailment of plaintiff's right to introduce testimony on a vital issue. If such testimony had been introduced, it might well be that the verdict returned would have been unassailable.

We have concluded that, in these circumstances, the application for a rule to show cause should be granted, and the plaintiff may proceed accordingly.