MABEL KENNEDY, ADMINISTRATRIX OF THE ESTATE OF PATRICK H. KENNEDY, DECEASED, PLAINTIFF-RESPONDENT, v. UNITED STATES FIDELITY AND GUARANTY COMPANY, A BODY CORPORATE, DEFENDANT-APPELLANT.

Submitted May 25, 1934—Decided September 27, 1934.

432

For the plaintiff-respondent, *Samuel D. Williams.*

For the defendant-appellant, *Cecil S. Ackerson* and *Melvin A. Philo.*

The opinion of the court was delivered by

CASE, J. Plaintiff sued to recover for the death of her husband, Patrick H. Kennedy, on a policy issued by the defendant company. Judgment went for the plaintiff, and defendant appeals.

Plaintiff's intestate was a member of the volunteer fire department of the borough of Rumson, holding the position of senior driver, and as such was entitled to the benefit of a group policy which insured the members of that department, to quote the policy, "against bodily injuries sustained by any such member through external, violent and accidental means while he is actually in the performance of his duties as a member of the volunteer fire department named herein, and solely from causes growing out of and attendant upon such duties, and not otherwise," but not against "any accidental bodily injury caused or contributed to, directly or indirectly, by sickness or disease."

Kennedy, on the night of February 11th, 1932, answered with other members of the department, a fire alarm and drove his company truck, a one thousand-gallon pumper weighing between thirteen and fourteen tons and measuring about twenty-three feet in length over all, through a thick fog to and from the source of the alarm. As the truck, bearing its quota of firemen, was proceeding down Ridge road in the

borough of Rumson at a speed between twenty-five and thirty miles an hour another borough fire apparatus swung into Ridge road from a side street and in so doing loomed up through the fog in such proximity to the truck that there was great danger of a collision. Kennedy made a quick turn of the wheel, causing the truck to swerve to the left so violently that one of his fellows was almost catapulted into the other apparatus. The truck, paralleling the other apparatus for a few feet along Ridge road, soon fell behind and followed to the scene of the fire. There was no contact or collision between the two apparatuses. The blaze was insignificant, and the truck, still driven by Kennedy, who apparently had not been out of the driver's seat, was returned without delay to its house. Kennedy thereupon got down from the truck, asked for a cigarette and, without more, dropped unconscious to the floor. He never revived. Fifteen minutes had elapsed between the avoidance of the collision and Kennedy's collapse. The record of the company shows that the truck left the firehouse at nine-ten and returned at nine-thirty. Kennedy was forthwith carried to the Red Bank Memorial Hospital, where, eight or ten minutes after his collapse, he was examined by a physician and pronounced dead. The recovery was upon the theory that Kennedy's death was due to acute dilatation of the heart, an injury caused by accidental strain incident to the near-collision.

Appellant wrote down seven grounds of appeal, of which all but the third and fourth are now abandoned. The third ground is that "the trial court erred in denying defendant's motion for direction of a verdict in favor of the defendant against the plaintiff," and is comprehensive of so much of the fourth as is well taken. Wherefore the single litigated question is whether the trial court erred in denying the defendant's motion for a direction of verdict.

The appellant contends that its trial attorney in making the motion for a direction presented the following reasons: (1) there was no proof that the insured suffered death as the result of bodily injury sustained through external, violent

and accidental means; (2) there was not sufficient and positive proof of bodily injury to the insured as required by law; (3) the death of the insured was not solely the result of bodily injury sustained through external, violent and accidental means; (4) the death of the insured was not the result of bodily injury but was caused or contributed to by disease. We are in doubt whether the argument before the trial court precisely stated all of these reasons, but we shall assume that it did. We note, however, that the third reason imports the word "solely," which does not appear in the policy in that connection.

Four physicians testified. Three of them, called by the defense, stated rather positively that in their respective opinions death was due to a diseased heart condition as contrasted with an injury; but that goes to the weight of the evidence which may not be argued on an appeal. Further, in passing upon motions to nonsuit and for the direction of a verdict the court cannot weigh the evidence, but must take as true all evidence which supports the view of the party against whom the motions are made, and must give him the benefit of all legitimate inferences which are to be drawn therefrom in his favor. *Andre* v. *Mertens*, 88 *N. J. L.* 626. The fourth physician, Dr. David H. Karp, was called by the plaintiff. Dr. Karp had known Kennedy professionally for more than fifteen years and had made a physical examination, including a heart examination, of the latter on December 4th, 1931. Over the years he had examined Kennedy's heart approximately twenty-five times. Our reading of Dr. Karp's testimony as a whole satisfies us that the evidence therein contained and the legitimate inferences to be drawn therefrom sustain a factual finding; that death was due to acute dilatation of the heart; that the dilatation was not a pathological condition but was the physiological effect of the strain; that the strain was the result of putting the body to a greater effort in the lurching of the truck than it could well stand; that while there was no impact, the strain was, in the sense mentioned, a physical injury, and that Kennedy did not have

a disease of the heart or other sickness or disease that caused or contributed to, directly or indirectly, his injury.

Was the injury caused by means that were external, violent and accidental? The burden rested upon the plaintiff to make a *prima facie* case for recovery by showing the affirmative of that policy requirement. *Kresse* v. *Metropolitan Life Insurance Co.*, 111 *N. J. L.* 474, 477. We think that sufficient evidence was introduced to take the question to the jury. There was, as we have said, no contact or collision between the fire trucks. That accident was averted. But it does not follow that the combination of events culminating in and causing the strain was not accidental. Certainly the crisis of the two vehicles meeting at the cross-roads was neither intentional nor expected. Notwithstanding the numerous occasions, absolutely, when motor vehicles do come in peril, one from another, such instances are spread amongst almost numberless vehicles and through the life of any single vehicle and may not be said, relatively, to be within the usual course of events. Obviously the jury could, and did, consider that the meeting of the trucks was accidental. But appellant insists that, however unexpected the threatened collision, Kennedy met the situation by doing precisely what he intended to do, that is, he purposely swerved his truck to the left, and that since his act in that respect, as is said, caused his injury, the injury was not due to accidental means. What Kennedy's thoughts and purposes were can be surmised only from what he did. What he did was to steer his vehicle out of danger, thus saving, at the cost of his own life, the two apparatuses and their respective loads of human freight from a serious crash. Whether his movements were deliberative or were simply the unpremeditated and subconscious reaction of an experienced driver to a sudden peril cannot be determined as a matter of law. Did he foresee, and foreseeing invite, the tremendous strain upon his body? Did he measure the results of a collision against those of an attempted escape? He had a brain with which to think; he had also, doubtless, a human instinct to avoid disaster. Was his action the result of thought or of instinct? May it not have been a reflex from

the sudden danger with which he was unexpectedly confronted? It was for the jury to decide.

Appellant contends that Dr. Karp's testimony was left in such a posture that it is in the alternative, viz., it leaves his opinion open as to whether the full force of the dilatation came simultaneously with the strain or the dilatation occurred then in sufficient degree to disorganize the heart and was progressive until death, and appellant argues that the latter alternative would involve factors not accidental and consequently that the plaintiff's case is not sufficiently positive to go to the jury. With that we do not agree. Dr. Karp's opinion that the injury was received from, and at the time of, the strain and that that injury, though it may have been progressive, was the cause of death, is, we think, stated adequately to receive the attention of the jury. Some excerpts from his testimony are: "Q. In other words, doctor, it was acute dilatation of the heart, in your opinion? A. Yes, sir. Q. That might have been sudden or progressive? A. That is right. Q. And being progressive it might have continued over an appreciable length of time? A. Not too long if it is going to result in death. * * * You may have dilatation that will last hours or days, but not when it ends in a fatal condition, as this did. * * * Q. Isn't it a fact that when a man suffers acute dilatation of the heart death is immediate? A. Not immediate. * * * Q. You said this man suffered dilatation as a result of the lurch of this automobile? A. I said that in this case it was fatal; I have to assume that the dilatation was to the extreme degree. * * * Q. Do you say that that [viz., attempting to drive the truck so as to avoid a collision] would induce such a strain as to cause a fatal dilatation of the heart? A. Yes, sir."

According to the Karp testimony Kennedy suffered a major heart injury. At the time and continuously to his death, if his death was contemporaneous with his collapse, he was engaged actually and exclusively in the performance of his fireman's duties. The jury might well find that the injury arose solely from causes growing out of and attendant upon such duties. In approximately fifteen minutes he was dead.

That the dilatation, during that time, may have been progressive is not, we think, a bar to plaintiff's case.

If Kennedy's act was not of his own choosing but was his unplanned and subconscious response to the demands of the instant, was it not the force of his heavy and cumbersome truck, held by its own momentum to its original course, that tended to pull the wheel from his grip and thus subjected his body to the fatal strain? It is conceivable under the evidence that it was; and so that, too, was a jury question. The impelling force of the truck's momentum was violent and was external to Kennedy's body.

Therefore it was within the realm of a factual determination of the evidence to find that there was, without an intentional causative act by the insured, a congeries of events following so instantly one upon the other as to be practically synchronous, initiated and caused by the accidental meeting of the trucks and consequently as a whole properly defined as accidental, resulting in Kennedy's injury and death from external violence.

Appellant emphasizes the distinction between an injury that is accidental and one that is caused by accidental means. We have recognized that distinction (*Lower* v. *Metropolitan Life Insurance Co.*, 111 *N. J. L.* 426), but we see no point in its application to the instant case; for the injury here was caused, as the jury was free to find, by accidental means and was therefore within the policy coverage. Our Supreme Court recently considered in *Lawrence* v. *Massachusetts Bonding and Insurance Co.*, 113 *Id.* 265, that while the wrenched back suffered by the plaintiff in that case might be considered an accident, the means—the throwing of a quoit in a game of quoits in the plaintiff's usual manner and without deviation from the intentional and the normal—were not accidental. A marked distinction between that case and the present is that there the result was neither preceded by nor dependent upon anything of an accidental nature.

We conclude that none of the reasons stated to the trial judge gave grounds for a directed verdict.

The judgment below will be affirmed.

438

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TREN-CHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 15.

*For reversal*—None.