GRACE SHOPP, RESPONDENT, v. THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, APPELLANT.

Submitted February 15, 1935—Decided May 17, 1935.

For the appellant, *Randolph Perkins* and *John Drewen.*

For the respondent, *McCarthy & McTague.*

The opinion of the court was delivered by

LLOYD, J. The insurance company issued its policy on the life of James G. Shopp in favor of Grace Shopp, his mother. The policy provided for the payment of $1,000 upon his death. It also provided for payment of an additional sum of $1,000 upon proof of death of the insured "as a result directly and independently of all other causes, of bodily injuries, effected solely through external, violent, and accidental means of which, except in case of drowning or of internal injuries revealed by an autopsy, there is a visible contusion or wound on the exterior of the body;  *  *  * provided, however, that no accidental death benefit shall be payable if the death of the insured resulted  *  *  * directly or indirectly from bodily or mental infirmity or disease in any form."

The insured died on July 18th, 1932, under circumstances which will be hereafter narrated. The sum payable upon a normal death was paid, and an action was brought for the additional sum provided for in case of death by accident. Verdict and judgment resulted in favor of the plaintiff, and the defendant, appealing, contends that the court should have controlled the case by the direction of a verdict in its favor.

The question in the case is whether the proofs were sufficient to show that the death came within the provisions of the policy defining death by accidental means.

Deceased was a young man twenty years of age, over six feet tall and weighing one hundred and seventy pounds. He had been swimming with other companions in the pool of the Young Men's Christian Association at Menlo Park on the day of his death. The depth of the pool varied from three and one-half feet at the shallow end to eight feet at the other end. Insured was alone when he died, a companion a few minutes before having left him seated at the edge of the shallow end of the pool. Five minutes later the companion returned and discovered the deceased lying on a drain which is constructed flush with the bottom of the pool at its deep end. Being brought to the surface, and efforts at resuscitation failing, he was pronounced dead by a physician who had been summoned.

Plaintiff's proofs tended to show that there was a discoloration of one cheek and a mark on the forehead variously described as a cut, a bruise and an abrasion and as being about one and one-quarter inches long and one-sixteenth of an inch wide; that there were no cuts or marks on the face immediately before the deceased entered the pool. There was further proof that a little more than two years previously he had been medically examined and his heart and lungs found to be normal. A physician who made the examination was called as a witness and, in response to hypothetical questions, based upon the foregoing narration of facts, testified that the boy did not die from a pathological cause or disease but from some physiological condition. Defining what he meant by a physiological condition he said that physiology has to do with the normal body function; pathology has to do with diseased conditions as found in the body, and that the conditions in the present case were not due to diseased conditions but to some interference with the normal functions.

In answer to a question from the judge as to whether death was due to an internal pathological condition or whether it was due to trauma, the witness replied that he did not believe the boy died from any diseased condition; that there was some interference with the normal physiological functioning of the body; how caused, whether by accident or other means, he did not know.

There was a post mortem examination of the body made by the county physician, and his testimony was to the effect that he removed the vital organs, including the heart and lungs; that drowning was not the cause of death; that the heart was slightly enlarged; that there was a chronic sclerosis, and that death was caused by acute cardiac dilatation, probably brought on by exertion.

The burden rested upon the plaintiff to show by adequate proofs that death resulted from accidental causes as defined in the terms of the policy, and a careful examination of the proofs leads us to the conclusion that this burden has not been met. There is no proof in the case as to how the body of the deceased came to be in the pool. There was no proof as to how the mark or marks on the forehead came there or whether they were sufficient to cause death; whether the insured fell into the water or voluntarily entered it, and whether if a fall, it was caused by accident, unconsciousness or prior death due to a heart condition as testified by the county physician. All of these questions are left in pure conjecture.

We are referred to the case of *Kennedy* v. *United States Fidelity Co.*, 113 *N. J. L.* 431, as authority for the contention that the present case was properly submitted to the jury. We think not. That case turned upon what properly constituted an accident rather than the adequacy of proof of an accident as the cause of the death that ensued.

If surmise were permissible the absence of death by drowning would suggest a cause other than accident or injury, and this would be accounted for by the failure of the heart to function, as evidenced by the absence of absorption of water in the lungs.

There was no contradiction of the testimony respecting death by drowning, both the physician called by the plaintiff and the county physician testifying that drowning was not the cause of death, a cause recognized as accidental by the policy. It being essential that death by external, violent and accidental means to which disease did not contribute be established, we think the proofs were insufficient for the pur-

pose and the defendant was entitled to have its motion for direction granted.

The judgment is reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ.   14.