32 N.J. Super. 33 (1954)
107 A.2d 665
ANNA MAGICH, AS GENERAL ADMINISTRATRIX OF THE ESTATE OF MICHAEL MAGICH, DECEASED, AND BENEFICIARY, PLAINTIFF-APPELLANT,
v.
JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued August 9, 1954.
Decided August 31, 1954.
*35 Before Judges SCHETTINO, HETFIELD and CAFIERO.
Mr. Stephen Mongiello argued the cause for plaintiff-appellant.
Mr. John P. Nugent argued the cause for defendant-respondent (Messrs. Nugent and Rollenhagen, attorneys).
The opinion of the court was delivered by CAFIERO, J.S.C. (temporarily assigned).
This is an appeal from a judgment of involuntary dismissal entered by the Hudson County District Court on a motion at the close of plaintiff-appellant's case.
Plaintiff is the mother of Michael Magich, deceased, who died June 19, 1953, under circumstances which will hereafter be narrated. She was the beneficiary named in a policy of insurance issued by the defendant, John Hancock Mutual *36 Life Insurance Company, to her said son, which contained benefit provisions for the sum of $1,000 representing life insurance; and an additional sum of $1,000 for accidental death. The clause providing for the latter, being as follows:
"If the Employee * * * suffers any of the losses described below, as a result of bodily injuries sustained solely through external, violent and accidental means, * * * the company shall pay to the Employee, if living, otherwise to the beneficiary, the amount of insurance specified for such loss * * * provided however, that no payment shall be made for any loss caused wholly or partly, directly or indirectly, by * * * (c) suicide while sane or insane, or intentionally self inflicted injury; or * * *."
The defendant paid the death benefits, but denied the claim for the accidental death, whereupon this suit was brought. No answer was filed, and defendant in its opening to the jury stated that the proofs might show that the death was the result of suicide. This was not pleaded as an affirmative defense, but the jury was asked to examine the facts to determine whether it so occurred.
At the trial it was established that the insured's lifeless body was found sprawled on the kitchen floor of a small apartment in which he resided with his mother and elder sister. He had been alone in the apartment and his body was found by his said sister upon her return from work at about 5 P.M. She testified that the chain lock was on the door leading to the apartment; that the radio was playing, and that she gained entrance into the apartment through the help of neighbors. Upon doing so she observed her brother in the position stated, with a rifle across his legs. She also observed a tear in his shirt, a bullet wound, and a small hole in his stomach. There was no blood, only a red mark.
It was also established that a few days previous he had purchased this particular rifle, and other hunting equipment, consisting of a hunting coat, pants, shoes, gun cleaning equipment, a cartridge belt and a quantity of shells; and also had purchased a state hunting license. The rifle was a 3006 Remington, known as a high powered rifle, had a hair trigger *37 and there was testimony that the gun could be discharged without touching the trigger. After purchasing the equipment he showed them to his mother and sister, and also showed the rifle, shells and cleaning equipment to a young nephew. The mother and sister testified that he had been in a "happy-go-lucky" mood, and that he was making preparations to go on a hunting trip. A tailor woman testified that he brought a pair of trousers to her the day before his death, to be dry-cleaned, and that he had called for them on the morning of his death; but that they weren't ready, and he was to have returned for them that afternoon. It was also testified that he was then approximately 19 years of age, had been discharged from the army, about a year before, and had since been steadily employed, earning $85 a week at the time of his death; but that by reason of the nature of his work he appeared to be under a strain, and he had sought and received time off for a vacation.
At this posture of the proof plaintiff rested; whereupon the jury was retired and defendant moved for a judgment of involuntary dismissal. The court granted the motion, and in the discussion which followed the court remarked that the plaintiff for some reason never attempted to put in evidence the death certificate. Counsel for plaintiff sought to justify his position, and upon failing to convince the court, asked permission to reopen his case to offer the death certificate. The application was denied, and plaintiff raises as her grounds of appeal that the court erred in granting defendant's motion, and also that the refusal of the trial court to reopen the case, to meet any question regarding death or its causes, was an abuse of discretion.
The court was justified in granting defendant's motion on the proofs which were then before it. The burden rested upon the plaintiff to show by adequate proofs that death resulted from accidental causes as defined in the terms of the policy. Where coverage of a policy is limited to death or injury sustained through external, violent and accidental means, the burden rests upon plaintiff in an action upon the policy to make a prima facie case in favor of a recovery by *38 showing the affirmative of that requirement. Kennedy v. U.S. Fidelity & Guaranty Co., 113 N.J.L. 431, 174 A. 531 (E. & A. 1934). The plaintiff is required to submit proof on the cause of death and not to leave this important fact to the court or jury to conjecture or surmise. She must submit facts from which the cause may be at least inferred. Shopp v. Prudential Ins. Co. of America, 115 N.J.L. 162, 178 A. 724 (E. & A. 1935). Whether the death certificate would suffice for such purpose, we cannot state since the certificate is not before us, and the application to reopen the case to offer it was refused. However, the court saw fit to comment upon it, and we must assume that it did so, very definitely, for a purpose. The application should have been granted, because if the cause of death were shown to have occurred by a bullet wound, this fact, together with the other proofs in the case, coupled with the presumption which exists against suicide, would have been sufficient to establish a prima facie case, requiring the defendant to go forward with evidence, at the peril of suffering a direction of a verdict against him if he fails to do so.
There is a legal presumption against suicide, and if that presumption is coupled with the other proofs required of the plaintiff, it makes out a prima facie case. This presumption is of course rebuttable. Kresse v. Metropolitan Life Ins. Co., 111 N.J.L. 474, 168 A. 634 (E. & A. 1933). The presumption against suicide is not evidence, but it does require the opposing party to bring forth evidence to overcome it. Kirschbaum v. Metropolitan Life Ins. Co., 133 N.J.L. 5, 42 A.2d 257 (E. & A. 1935); Carroll v. Prudential Ins. Co., 125 N.J.L. 397, 15 A.2d 810 (E. & A. 1940).
"It is basic on a motion to dismiss at the close of plaintiff's case that the plaintiff is to have the benefit of all facts proven, together with all direct or indirect inferences which may be reasonably drawn from such facts." Pirozzi v. Acme Holding Co. of Paterson, 5 N.J. 178, 185, 74 A.2d 297 (1950).
The court having pointed out the apparent probative value of the death certificate, should have gone further, and *39 when requested should have permitted plaintiff to reopen her case to establish the cause of death. The court's refusal appears to have been based upon the fact that the offer was not made until after it had granted defendant's motion. Standing alone, this is insufficient; particularly, when not to do so may prevent rendering substantial justice, and the reopening of the case was a matter which could easily have been accomplished. The jury had not been discharged and reopening the case at the time the request was made did not present any problem. Cf. Smith v. Smith, 17 N.J. Super. 128, 85 A.2d 523 (App. Div. 1951).
The issue in question was a vital one and plaintiff should have been given the opportunity she sought to supplement her proofs. Carlo v. Okonite-Callender Cable Co., 2 N.J. Super. 122 (App. Div. 1949), affirmed 3 N.J. 253 (1949); Juliano v. Abeles, 12 N.J. Misc. 667, 174 A. 341 (Sup. Ct. 1934). Denial of plaintiff's request was reversible error.
For the reasons above stated, the judgment under appeal is reversed and remanded, to the end that a new trial may be had. No costs are allowed.