32 N.J. Super. 315 (1954)
108 A.2d 295
VIRGIL GIBILTERRA, PLAINTIFF-APPELLANT,
v.
ROSEMAWR HOMES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 20, 1954.
Decided October 4, 1954.
*317 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Samuel Doan argued the cause for plaintiff-appellant (Mr. Archibald Kreiger on the brief).
Mr. James B. Emory argued the cause for defendant-respondent Rosemawr Homes, Inc. (Messrs. Emory, Langan & Lamb, attorneys; Mr. James J. Langan on the brief).
Mr. William T. McElroy argued the cause for defendants-respondents, United Construction Co. and Francis L. Bayley (Messrs. Shaw, Hughes & Pindar, attorneys; Mr. Robert Shaw on the brief).
The opinion of the court was delivered by CLAPP, S.J.A.D.
This was an action for negligence which was dismissed at the close of plaintiff's case, on the ground that he had not made out a cause of action as against any of the three defendants. He appeals.
The defendant, Rosemawr Homes, Inc., was engaged in developing certain of its property. It hired or rented from *318 the defendant, United Construction Co., Inc., a steam shovel to dig, among other things, a trench from a house to the street so as to enable Patsy Vellone, a plumbing contractor, to connect the house plumbing with the sewer line in the street. Plaintiff was Vellone's helper. The defendant, Francis L. Bayley, United's employee, the "steam shovel man on the project," dug the trench, in some measure at any event pursuant to Vellone's instructions, making it four feet wide and, for some of its distance, 12 feet deep. While plaintiff was at work in the trench, one side caved in, injuring him seriously.
We think the dismissal should stand as against Rosemawr. The plaintiff, citing Restatement of Torts, §§ 413 and 416, seeks to hold Rosemawr upon the theory that the ditch was inherently dangerous to the plaintiff unless special precautions were taken in digging it, and that therefore Rosemawr, as the employer of the independent contractor, United, is liable for United's alleged failure to take such precautions.
This theory has not met with approval everywhere. Silveus v. Grossman, 307 Pa. 272, 161 A. 362 (Sup. Ct. 1932). Our cases use the term "nuisance." Terranella v. Union Bldg. and Construction Co., 3 N.J. 443, 446 (1950); Sarno v. Gulf Refining Co., 99 N.J.L. 340, 342 (Sup. Ct. 1924), affirmed 102 N.J.L. 223 (E. & A. 1925); Cuff v. Newark and New York R.R. Co., 35 N.J.L. 17 (Sup. Ct. 1870), affirmed 35 N.J.L. 574 (E. & A. 1871).
But we need not in this case look further into the matter; for, as stated in the Restatement at the places cited, the rule applies only to a situation "necessarily" giving rise to an "unreasonable" or a "peculiar" risk of bodily harm. See Prosser, Torts 488 (1941); Mechem, Outlines of Agency (4th ed. 1952), § 488; 57 C.J.S., Master and Servant, § 590, p. 361; Besner v. Central Trust Co., 230 N.Y. 357, 130 N.E. 577, 23 A.L.R. 1084; Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425, 20 A.L.R.2d 868; Note, Responsibility for the Torts of an Independent Contractor, 39 Yale L.J. 861 (1930). As to the phrase "inherent danger," cf. Lydecker v. Freeholders of Passaic, 91 N.J.L. 622, *319 627 (E. & A. 1918); O'Donnell v. Asplundh Tree Expert Co., 13 N.J. 319, 329 et seq. (1953). It cannot be supposed from the proofs (even taking into account testimony that might have been given by Morris Mandl, as hereinafter stated) that the mere making of an excavation with a steam shovel would necessarily give rise to an unreasonable or peculiar risk to the plaintiff.
Generally the person who engages an independent contractor is not to be charged with the negligence of the latter's employee. Meny v. Carlson, 6 N.J. 82 (1950). The case against Rosemawr is within the general rule and was properly dismissed.
As to the liability of the defendants, Bayley and United, the situation is different. First, United claims it was, as a matter of law, relieved of responsibility for Bayley's acts when it "rented or hired" him and the shovel to Rosemawr. With this, we do not agree. United paid Bayley his wages. Besides it could reasonably be inferred that United expected him to look after its interests in operating the shovel and, failing that, could prohibit him from operating it. The question as to whether the relationship between United and Bayley was that of master and servant was for the jury. Larocca v. American Chain and Cable Co., 13 N.J. 1, 6 (1953); Younkers v. Ocean County, 130 N.J.L. 607 (E. & A. 1943); cf. Mersey Docks and Harbour Board v. Coggins and Griffith (Liverpool), Ltd. [1947] A.C. 1 (H.L.).
Next, United, as an independent contractor, claims these injuries occurred after its work had been completed and accepted by the owner or employer, and therefore it and its employee are absolved from liability. Miller v. Davis & Averill, Inc., 137 N.J.L. 671 (E. & A. 1948); but cf. Restatement of Torts, § 385; Prosser, Torts, 694-697 (1941). See further Hale v. Depaoli, 33 Cal.2d 228, 201 P.2d 1, 13 A.L.R.2d 191, 239; and in support thereof, Prosser, supra, 695. The theory of this rule is "`that, by occupying and resuming exclusive possession of the work, the owner deprives the contractor of all opportunity to rectify *320 his wrong.'" Miller v. Davis and Averill, Inc., 137 N.J.L., at page 675, supra. The only proof of Rosemawr's acceptance of the work and resumption of exclusive possession over the property is a statement by Vellone, its independent contractor, that after the work was finished he (not Rosemawr) told Bayley it was satisfactory. That proof does not sustain the proposition.
Finally we come to the question whether or not the trial court erred in refusing to allow plaintiff to take the testimony of Morris Mandl, an expert witness. There was no proof of negligence without his testimony. Indeed, there was no offer of proof as to what his testimony would be. However, in the pretrial order plaintiff charges United and Bayley with negligence by reason of their failure to use "standard methods" in excavating the trench, in that the sides thereof were straight, not V-shaped. The term "standard methods"  at any event, reading it with the reference to experts in the answer to the interrogatory hereinafter mentioned  seems to us a sufficient indication that expert testimony was to be adduced on the point. Cf. Beck v. Monmouth Lumber Co., 137 N.J.L. 268, 277 (E. & A. 1948).
Assuming, then, that there had been proof that Bayley deviated from standard methods so as to give rise to an unreasonable risk of causing harm, Kelly v. Loft, Inc., 124 N.J.L. 185 (E. & A. 1940), we think plaintiff would have made out a case for the jury as against United and Bayley. United, through Bayley, undertook to operate a steam shovel here for hire, and it is for a jury to determine whether any such deviation constituted negligence. Prosser, supra, 239; 2 Wigmore, Evidence (3rd ed. 1940), 489. It does not become a question of law for the court merely because of the testimony that Bayley was working under Vellone's directions with no discretion as to the "kind of hole" dug.
Mandl's testimony therefore was vital to plaintiff's case as against these two defendants. The court refused to allow it to be taken, R.R. 4:23-12, because his name did not appear in answer to the following interrogatory of those defendants:
*321 "State the name of every person known to plaintiff to have knowledge of any of the facts on which the allegations of the plaintiff are based * * *."
After stating several names, plaintiff's answer added at the end:
"and several experts who have not as yet been retained."
Thereafter and before the trial plaintiff retained another attorney, and the latter argued strongly at the trial and argues now that under the law he was not required by that interrogatory to furnish the names of experts. See Schnitzer & Wildstein, N.J. Rules Serv. A.IV-457. He claims that experts do not have "knowledge of relevant facts." R.R. 4:16-2. However, the question as to what constitutes a "standard method" is surely a matter of fact, not inference. Wigmore has made this clear (7 Wigmore, supra, §§ 1917, 1919):
"Lord Mansfield in effect answered the objection that the expert had no personal knowledge, no facts, by pointing out that the subject was in truth one of fact, but of a class of facts about which expert persons alone could have knowledge * * *."
We need not decide here whether an interrogatory should be permitted which requires, not the names of those having knowledge of the relevant facts, but the names of those among them who are to be called as witnesses. Cf. Atlantic Northern Airlines, Inc. v. Schwimmer, 12 N.J. 293, 308 (1953); but see 4 Moore's Federal Practice (2nd ed. 1950), § 26.19. In May 1954 the distinguished Advisory Committee on Federal Rules of Civil Procedure  in order to resolve a conflict in the federal cases  proposed an amendment to Federal Rule 33 to permit an interrogatory requiring
"a listing of the names of witnesses whom the party interrogated expects to call at the trial." See Committee's note to proposed amendments to Federal Rules 33 and 16 (4).
Plaintiff argues that it is not proper to take an expert's deposition (upon which matter we do not pass), and therefore *322 his name should not be given an interrogating party. But this does not follow. Knowing the name of the expert, an adversary can investigate his qualifications and secure experts of equal standing.
We think the trial court's ruling, that the interrogatories here properly required plaintiff to disclose the names of experts such as Mandl, was sound and in keeping with the very salutary purposes of our discovery practice. However, the ruling being highly novel, we question whether the plaintiff should have had visited upon him the penalties provided in R.R. 4:23-12. Cf. Hogan v. Hodge, 6 N.J. Super. 55, 60 (App. Div. 1949). R.R. 4:23-12 must be fully enforced, but still there should have been some redress for the plaintiff here.
Plaintiff moved for a mistrial (perhaps it would have been more appropriate, Sevlesruo Holding Corp. v. American, etc., Co., 11 N.J. Misc. 334 (Sup. Ct. 1933), to have designated it a dismissal without prejudice) because of the court's refusal to allow him to put in the expert testimony; but this motion was not made until after defendants had moved for a dismissal and the court had said there was no proof of negligence. Still, the mere fact that the trial court had so spoken, is not in this case dispositive of the matter. Cf. Magich v. John Hancock Mutual Life Ins. Co., 32 N.J. Super. 33 (App. Div. 1954).
The granting of some redress here, through a relaxation of R.R. 4:23-12 or, if justice warranted it, through a new trial or otherwise, was, we conclude, clearly called for by the circumstances, and requires us now to award a new trial. Cf. Carlo v. Okonite-Callender Cable Co., 3 N.J. 253, 263 (1949). In the exercise of the discretion inherent in the power to relax the rules or to allow a mistrial or a voluntary dismissal  especially where plaintiff's entire cause thereby stands or falls  the trial court is called upon to meet the high responsibility, with which every court is charged, of rendering justice in the particular case.
Affirmed as to Rosemawr. Reversed and new trial ordered as to United and Bayley.